**In re ELSUB CORPORATION, a Corporation of the State of New Jersey, Alleged Debtor.**

**Bankruptcy No. 85–05972.**

United States Bankruptcy Court, D. New Jersey.

Feb. 27, 1987.

Crummy Del Deo, Dolan, Griffinger & Vecchione by Michael R. Griffinger, Steven R. Reynolds, Newark, N.J., Weil, Gotshal & Manges by Edward C. Sobota, New York City, for Elsub Corp.

McCarter & English by Theodore Moskowitz, Edward Nathan, Newark, N.J., for Playboy Enterprises, Inc.

Valore, McAllister, Westmoreland, Gould, Vesper & Schwartz by Alan I. Gould, Northfield, N.J., for Unsecured Creditors' Committee.

Michael J. Mella by Howard H. Houston, Fair Lawn, N.J., for Wendy Roth.

Weinstein, Goss, Katzenstein & Schleifer Associates, P.C. by Allen M. Mandelbaum, Philadelphia, Pa., for Mikhail Kopchinsky.

Mayro & Mayro by Tina J. Mayro, Brigantine, N.J., for Pretty Posies.

Basile, Testa & Testa by Michael L. Testa, Vineland, N.J., for Samuel DelRossi.

Beverly A. Coleman, pro se.

ROSEMARY GAMBARDELLA, Bankruptcy Judge.

Before the court are two matters for disposition: a motion by Elsub Corporation (hereinafter "Elsub"), the alleged debtor herein, to dismiss the involuntary petition filed against it by Playboy Enterprises, Inc. (hereinafter "PEI") pursuant to Section 303(c) of the Bankruptcy Code, and a motion by PEI to add creditors to the involuntary petition filed by PEI against Elsub.

This court has dealt with the history of this case at length in a prior reported decision, *In re Elsub Corporation*, 66 B.R. 172 (Bkrtcy.D.N.J.1986).

On November 13, 1985, PEI filed a single-creditor involuntary petition under Chapter 11 of the Bankruptcy Code against Elsub. In its petition, PEI asserted that it was a creditor of Elsub, holding claims against Elsub which are not contingent as to liability, and amount in the aggregate, in excess of the value of any lien held by it on Elsub's property securing such claim, to at least $5,000.00. PEI further stated that "there are fewer than twelve persons holding claims against the Debtor that are not contingent as to liability or subject to a bona fide dispute." PEI asserted in its petition that Elsub was indebted to PEI pursuant to a promissory note dated April 3, 1984, in the initial amount of $45,384,-000.00. The note allegedly had a principal balance, as of the date of the filing of the petition, of approximately $38,262,355.00, plus accrued and unpaid interest of not less than $2,348,155.00. PEI further asserted in its petition that Elsub is indebted to PEI for certain management fees in the amount of approximately $5,569,000.00 pursuant to a Confirmation Agreement dated April 3, 1984. Additionally, PEI contended that Elsub is generally not paying its debts as they become due and that an order for relief is necessary to recover to the alleged debtor's estate allegedly voidable preferences or fradulent conveyances made by Elsub. On November 14, 1985, Elsub filed a notice of motion seeking an order dismissing the involuntary petition with prejudice and seeking summary judgment in its favor on the grounds that: (1) the petition was not filed in good faith; (2) only one petitioning creditor filed the involuntary petition notwithstanding the fact that Elsub had more than twelve creditors; (3) this court lacks subject matter jurisdiction over the petition, and; (4) the petitioning creditor failed to state a claim upon which relief may be granted. Elsub, on November 14, 1985, also filed an Answer, Affirmative Defenses and a Counterclaim pursuant to 11 U.S.C. § 303(i). By its counterclaim,

Elsub asserts that PEI exercised bad faith in filing the involuntary petition which resulted in injury to Elsub and its affiliates. Elsub, as part of its affirmative defenses and counterclaim under 11 U.S.C. § 303(i), asserts that PEI filed the involuntary petition in bad faith for the following reasons:

(1) PEI knew or should have known that the creditors of Elsub include the creditors of Elsinore Shore Associates (ESA), a partnership of which Elsub is a general partner, and that notwithstanding this knowledge, petitioner intentionally and willfully in bad faith filed a single-creditor petition;

(2) PEI was aware of the fact that Elsub has been paying its debts as they become due;

(3) PEI has not substantiated any preferential payment or fraudulent conveyance in its petition, and;

(4) PEI annexed its own correspondence to the involuntary petition and failed to annex responsive correspondence of Elsub, which one-sided presentation resulted in the omission of Elsub's denials of the alleged breaches and defaults.

Pursuant to a Case Management and Scheduling Order entered by this court on December 2, 1985, a hearing was conducted on December 10, 1985 for the limited purpose of determining whether PEI properly instituted a single-creditor involuntary petition against Elsub under 11 U.S.C. § 303(b)(2).

On January 3, 1986, this court ruled that the holders of claims against the partnership, ESA, were holders of claims against Elsub, a general partner of ESA, which claims were not contingent as to liability under 11 U.S.C. § 303(b)(1). Furthermore, this court determined that the single-creditor involuntary petition could not be maintained under § 303(b)(2) of the Bankruptcy Code, since on the date of the filing of the involuntary petition Elsub had twelve or more creditors holding claims which were not contingent as to liability or the subject of a bona fide dispute. This court retained jurisdiction over the involuntary proceeding

in order to allow creditors of Elsub an opportunity to join in the involuntary petition, pursuant to 11 U.S.C. § 303(c) and Bankruptcy Rule 1003(d). *See In re Elsub Corporation,* 66 B.R. 172, 188 (Bkrtcy.D. N.J.1986). Pursuant to the Case Management and Scheduling Order of December 2, 1985, any subsequent motion by PEI to amend or otherwise sustain the involuntary petition will not be determined by this court, until a determination has been made, after appropriate discovery and a hearing, regarding whether the filing of the involuntary petition under 11 U.S.C. § 303(b)(2) by PEI was done in good faith. Accordingly, whether intervention by other creditors will be allowed will be determined concurrently with this court's decision on the good faith issue.

In this court's January 3, 1986 decision regarding whether PEI properly instituted a single-creditor involuntary petition against Elsub under 11 U.S.C. § 303(b)(2), the court determined that pursuant to Bankruptcy Rule 1003(d) notice be sent to all known creditors of Elsub, including creditors of ESA, informing them of this court's findings and affording them a reasonable opportunity to join in the petition. *See In re Elsub Corporation,* 66 B.R. at 189. The court held that whether such intervention would ultimately be allowed would be determined concurrently with this court's findings on the issue of PEI's good faith in filing the original single-creditor involuntary petition. *Id.*

On February 28, 1986 this court entered an order pursuant to Bankruptcy Rule 1003(d) directing notice to creditors and retaining jurisdiction. The order provided in part that:

Playboy may move within thirty days after the date of the notice, which date shall be the mailing date of the notice, to creditors ... to amend the Involuntary Petition pursuant to section 303(c) of the Bankruptcy Code by joining in the Involuntary Petition a sufficient number of creditors who are qualified under Section 303(b) to be petitioning creditors against Elsub, *provided, however,* that Playboy shall have an additional ten days follow-

ing the expiration of the thirty day period within which creditors may join in the involuntary petition in which to file evidence of such creditor joinder.

The February 28, 1986 order further provided:

Any creditor eligible to be a petitioner under section 303(b) of the Bankruptcy Code shall be allowed to join in the Involuntary Petition only if it serves upon Elsub and files with the Court a verified petition for joinder ("Petition for Joinder") in the Involuntary Petition substantially in the form of Official Bankruptcy Form No. 11, containing all of the averments of fact required or contemplated by such form or such other form as is permitted by law; *provided, however,* that no Petition for Joinder shall be granted if the Court determines that the Involuntary Petition was filed in bad faith, *and provided further* that any such Petition for Joinder shall be of no force and effect unless (a) such Petition for Joinder is served and filed within the time allowed herein, and (b) the Court determines that the Involuntary Petition was not filed in bad faith, and (c) the Court grants a motion by Playboy to amend the Involuntary Petition to add the creditor named in such Petition for Joinder.

On May 8, 1986 the court sent out a notice to all known creditors of Elsub, including PEI, in accordance with its February 28, 1986 order informing them of this court's January 3, 1986 findings and affording them an opportunity to join in the petition pursuant to Bankruptcy Rule 1003(d). The May 8, 1986 notice (hereinafter "Intervention Notice") provided in relevant part:

PLEASE TAKE NOTICE THAT ON FEBRUARY 28, 1986, AN ORDER DATED FEBRUARY 28, 1986, (THE "ORDER"), WAS ENTERED IN THE UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF NEW JERSEY, DETERMINING THAT AN INVOLUNTARY PETITION, DATED NOVEMBER 13, 1985 (THE "INVOLUN-

TARY PETITION") UNDER CHAPTER 11 OF TITLE 11 OF THE UNITED STATES CODE (THE "BANKRUPTCY CODE") FILED BY PLAYBOY ENTERPRISES, INC. ("PLAYBOY") AGAINST ELSUB CORPORATION ("ELSUB"), THE ALLEGED DEBTOR NAMED IN THE INVOLUNTARY PETITION, COULD NOT BE MAINTAINED UNDER SECTION 303(B) OF THE BANKRUPTCY CODE BY PLAYBOY ALONE SINCE CREDITORS OF ELSINORE SHORE ASSOCIATES ("ESA"), A PARTNERSHIP IN WHICH ELSUB WAS THE GENERAL PARTNER, WERE ALSO CREDITORS OF ELSUB, AND TWELVE OR MORE OF SUCH CREDITORS WERE ELIGIBLE UNDER SECTION 303(B) OF THE BANKRUPTCY CODE TO BE INVOLUNTARY PETITIONERS AGAINST ELSUB ON THE DATE OF THE INVOLUNTARY PETITION.

PLEASE TAKE FURTHER NOTICE THAT, PURSUANT TO BANKRUPTCY RULE 1003(D) THE COURT HAS AGREED TO RETAIN JURISDICTION OVER THE INVOLUNTARY PETITION IN ORDER TO AFFORD TO OTHER CREDITORS OF ELSUB A REASONABLE OPPORTUNITY TO JOIN IN THE INVOLUNTARY PETITION BEFORE THE CASE IS CLOSED. YOU MAY (BUT ARE NOT REQUIRED TO) JOIN IN THE INVOLUNTARY PETITION BY SERVING UPON ELSUB AND FILING WITH THE CLERK OF THE COURT, IN ROOM 210, UNITED STATES COURTHOUSE, 401 MARKET ST., P.O. BOX 3437, CAMDEN, NEW JERSEY, WITHIN 30 DAYS AFTER THE DATE OF MAILING OF THIS NOTICE, A VERIFIED PETITION FOR JOINDER IN THE INVOLUNTARY PETITION WHICH CONTAINS THE AVERMENTS SPECIFIED IN OFFICIAL BANKRUPTCY FORM NO. 11 OR WHICH IS OTHERWISE SUBSTANTIALLY IN SUCH FORM. JOINDER MAY NEVERTHELESS BE DENIED IF THE COURT FINDS THAT THE INVOLUNTARY PETITION WAS FILED BY PLAYBOY IN BAD FAITH, OR IF THE COURT FOR ANY OTHER REASON DETERMINES THAT YOU ARE NOT QUALIFIED UNDER SECTION 303 OF THE BANKRUPTCY CODE TO JOIN IN THE INVOLUNTARY PETITION.

THE COURT HAS NOT RULED ON THE QUESTION OF WHETHER ELSUB WAS GENERALLY PAYING ITS DEBTS AS THEY BECAME DUE, NOR DOES THE COURT IN ANY WAY ENCOURAGE OR DISCOURAGE JOINDER IN THE INVOLUNTARY PETITION. THIS NOTICE IS INTENDED ONLY TO COMPLY WITH BANKRUPTCY RULE 1003(D) BY AFFORDING YOU NOTICE OF YOUR OPPORTUNITY TO JOIN IN THE INVOLUNTARY PETITION.

In response to the May 8, 1986 Intervention Notice, the following responses were filed with this court or received by ESA or Elsub:

1. A letter dated May 27, 1986, filed with the court on May 29, 1986, from Joel B. Gottlieb, Esquire of the firm of Harrington, Kady & Gottlieb, P.A., to the United States Bankruptcy Court in connection with the proceeding *"Accent Limo v. Elsinore Shore Associates"* requesting that the bankruptcy court forward to him a Form 11, Verified Petition for Joinder in the Involuntary Petition;

2. A note written on the reverse side of a copy of the Intervention Notice sent by this court from Gertrude Silverstein, filed with the court on May 14, 1986 stating that Gertrude Silverstein on November 10, 1985, suffered injuries while visiting the Atlantis Casino Hotel in Atlantic City, New Jersey.

3. A letter filed with the court on June 3, 1986 from Beverly A. Coleman to James J. Waldron, the Clerk of the United States Bankruptcy Court for this district, acknowledging receipt of the Intervention Notice and stating, "While I do not understand the legal technical jargon in this document, I am responding by the 30 days deadline as stated in the document to join in the involuntary petition. Or in other

words I want my rights protected until I can seek legal counsel."

4. On June 5, 1986 a Form No. 11, Creditor's Petition was filed with the court by Aecha Stanishewski which described the nature and amount of petitioner's claim against the Atlantis Casino Hotel as follows: "discrimination complaint filed through EEOC, Philadelphia."

5. A Form No. 11, Creditor's Petition was received, but not filed by the court from Wanda Y. Williams, which described the nature and amount of the petitioner's claim against ESA as follows: "former employee layoff subject to recall." The petition states that the debtor is generally not paying its debts as they become due as indicated by the following "will not rehire as of this date for last 3 years."

6. On June 9, 1986 an Involuntary Petition on behalf of HBA, East Inc. against ESA was filed in the case *In re Elsinore Shore Associates, A/K/A, F/K/A Playboy Elsinore Associates, The Atlantis Casino Hotel, Case No. 85–06058.* The petition was dated June 6, 1986. The nature and amount of the petitioner's claim was described as follows:

(1) The Atlantis Casino Hotel cancelled two boxing events during the Fall of 1985 for which they were obligated under existing contracts to pay $20,000.00 per event.

(2) N.J. Athletic Commission for ticket sales taxes, Amount Owed: $4,583.40.
Total Claims: $44,583.40

7. On July 2, 1986 two separate Involuntary Petitions were filed against Elsub Corporation by Robert W. Sebera, Esquire, counsel on behalf of two claimants, Stephen Canale and Wayman Andre Walker. The nature and amount of petitioners' claims were both described as follows: "personal injury damages due to negligence of Elsub Corporation employees."

On August 21, 1986 Elsub filed a motion to dismiss the involuntary petition filed on November 13, 1985 by PEI pursuant to Section 303(c) of the Bankruptcy Code. Elsub therein asserted that as of June 7, 1986, the date it asserts as the expiration

date for intervention based upon the thirty-day period contained in the Intervention Notice, no additional creditors of either Elsub or ESA eligible to file a petition for joinder under Section 303(b) had filed or served petitions to intervene or join in PEI's petition against Elsub pursuant to the terms contained in the February 28, 1986 order or the May 8, 1986 Intervention Notice.

Elsub asserted the following defenses to the petitions or pleadings received in response to the Intervention Notice:

1. No properly executed Joinder Petition from Accent Limousine was filed with the court or served on Elsub or its counsel.

2. The claim of Gertrude Silverstein was contingent as to liability and subject to a bona fide dispute. The response from that creditor consisting of a handwritten note failed to provide any of the averments specified in Official Bankruptcy Form No. 11 as required by this court.

3. Beverly A. Coleman has a contingent, unliquidated and disputed claim against ESA. Ms. Coleman's letter, furthermore, was not verified.

4. The form submitted by Aecha Stanishewski was not verified and petitioner's claim is unliquidated and disputed.

5. The petition filed by Wanda Y. Williams was not verified and Ms. Williams' claim is unliquidated and disputed.

6. The involuntary petition filed on behalf of HBA East Inc., although dated June 6, 1986, was received by Atlantis Casino and Hotel on June 9, 1986, two (2) days after the expiration of the 30–day joinder period. Stephen R. Reynolds, Esquire, counsel for Elsub, in a certification dated August 19, 1986 stated that he was advised by Michael M. Perlman, Esquire, counsel for HBA East Inc. that the Involuntary Petition was filed by HBA East, Inc. to induce a representative of the Atlantis Casino Hotel to respond to certain inquiries Mr. Perlman had made on behalf of his client and that since Mr. Perlman had re-

ceived the desired response, he had no intention of seeking to join HBA East Inc. in PEI's petition against Elsub and that his client never intended to join in the petition.

7. The petitions filed by counsel for Stephen Canale and Wagman Andre Walker were not verified, and filed after the established deadline for filing. The claims involved therein relating to alleged personal injuries, are contingent as to liability and fail to make any claim that Elsub is not paying its debts as they become due.

Elsub asserts that since no creditor of Elsub, eligible under Section 303(b) of the Bankruptcy Code to file an involuntary petition, has filed a petition for joinder in accordance with the terms of the court's February 28, 1986 order, the court should enter an order dismissing the Involuntary Petition for lack of jurisdiction.

On August 22, 1986 PEI filed a notice to amend its Involuntary Petition against Elsub by joining in the petition three (3) creditors whom it asserted were qualified to be petitioning creditors against Elsub. At that time PEI presented three separate certified "Creditor's Petition To Join In Involuntary Petition" against Elsub Corporation each executed on February 28, 1986 by Uniforms to You & Co., Inc., Recycled Paper Products, Inc., and Enesco Imports Corporation. In its motion PEI asserts that under the terms of this court's prior order dated February 28, 1986, PEI would have until June 9, 1986 to move to join creditors, and until June 19, 1986[1] to file evidence of joinder. PEI argues that the Clerk of the Bankruptcy Court did not send a copy of the Intervention Notice to counsel for PEI and that because counsel for PEI did not receive the notice, it had no reason to know that the 30 and 10–day period had begun to run. Counsel for PEI asserts therein that it did not learn that the Clerk of the Bankruptcy Court had mailed the intervention notice nor learn that the time for joinder had run until July 23, 1986 when counsel called the Office of the Clerk

to inquire as to when the Intervention Notice was to be mailed. PEI by its motion asserts that it would have moved for joinder of these creditors within the court's previous deadline had PEI received the Intervention Notice and requests that the court enter an order joining the three-named creditors to the Involuntary Petition against Elsub.

Subsequent to the filing by PEI of the motion to Add Creditors to Involuntary Petition, each of the three creditors which PEI sought to join sought to voluntarily withdraw their joinder petitions.

By letter to this court dated September 10, 1986 Mike Parker, Credit Manager of Uniforms to You & Co., Inc. stated:

> After discussing the creditor's petition with management to join in Involuntary Petition against Elsub Corporation, a decision has been made not to do so. Therefore, I am withdrawing in [sic] behalf of Uniforms To You Inc. their creditor's petition.

By letter to this court dated September 17, 1986, Bruce H. Wyatt, Secretary and Counsel for Enesco Imports Corp., stated:

> We respectfully request that the petitioner, Enesco Imports Corp., One Enesco Plaza, Elk Grove Village, IL 60007, an Ohio corporation, be allowed to immediately withdraw its previously-filed Joinder of the involuntary bankruptcy petition filed November 13, 1985 in the above-captioned case by Playboy Enterprises, Inc.
>
> It is our understanding that as a result of this withdrawal the undersigned petitioner will not be required to appear at 10:00 a.m. on September 25, 1986 in Chicago, Illinois for the depositions scheduled in the above-captioned case at the offices of Neal, Gerber & Eisenberg, 208 South LaSalle Street, Suite 900.
>
> We further understand that our withdrawal from the above captioned case will not effect nor preclude the enforcement of the undersigned's right under

---

1. The thirty-day time period contained in the February 28, 1986 order for PEI to move to amend the involuntary petition to join additional creditors actually expired on June 7, 1986 and the time period for PEI to file evidence of joinder expired on June 17, 1986.

the proof of claim filed against Elsinore Shores Associates, in a voluntary bankruptcy petition filed by that company in this same court, civil action # 85–06058.

By letter to this court dated September 26, 1986 Martin Weinberg, Credit Manager for Recycled Paper Products, Inc. stated:

On September 25, 1986 Stephen R. Reynolds took my deposition concerning Elsub/Playboy. During the deposition I was informed that this case is in litigation. Had I prior knowledge of the litigation, I would not have joined Playboy in their involuntary bankruptcy petition.

Recycled Paper Products is withdrawing from the involuntary Bankruptcy petition filed November 23, 1985 by Playboy Enterprises Inc.

HBA East Inc. also seeks to voluntarily withdraw its joinder request. By letter to the court dated September 10, 1986, Michael M. Perlman, Esquire, counsel for HBA East, Inc., stated:

On June 6, 1986 we sent an Involuntary Petition on behalf of our client, HBA East, Inc., in the above referenced matter. Please be advised that our client has no desire to join with Playboy Enterprises, Inc. as a creditor pursuant to Bankruptcy Rule 1003(d) in the matter entitled *In re Elsub Corporation*, Case No. 85–05972, which is referred to in the May 8, 1986 Notice Pursuant to Bankruptcy Rule 1003(d) Concerning Insufficiency of Involuntary Petition and Opportunity for Intervention.

It is our understanding, however, that we will not be precluded from enforcing our client's rights as a creditor against Elsinore Shore Associates in the above captioned case.

This court directed notice to all creditors of Elsub, including creditors of ESA, of the

present motion by Elsub to dismiss the Involuntary Petition.[2]

On November 10, 1986 the court received a written objection to the dismissal from Hewitt Travel. Hewitt Travel, by its owner, G. Robert Hewitt, stated "Atlantis Casino Playboy owes us (Hewitt Travel Commissions on Bookings of Hardings & D'Alonzo) $257.60 I would not like to see any dismissal before this debt is paid …". Hewitt Travel did not appear at the November 21, 1986 hearing.

On November 12, 1986 the court received a written response to the notice of the hearing on Elsub's motion to dismiss filed by Yee C. Zia. That claimant's response was directed against "Elsub Corporation d/b/a Atlantis Casino". Yee C. Zia asserted therein a claim for theft of money at a roulette table at The Atlantis Casino and a request for information regarding the casino's insurance coverage. Yee C. Zia did not appear at the November 21, 1986 hearing.

On the date of the November 21, 1986 hearing, PEI appeared in opposition to the motion to dismiss the Involuntary Petition. Michael L. Testa, Esquire, counsel for Samuel J. Del Rossi, also appeared in opposition to the motion to dismiss the Involuntary Petition. Counsel for Mr. Del Rossi stated that Mr. Del Rossi was a "discharged employee," and that he was "appearing on his behalf just to see what's been going on and get brought up to date." (Transcript of November 21, 1986, at p. 42). Counsel for Del Rossi further urged the court to "stay involved in the matter" and provide the necessary "monitoring of the situation." (Transcript of November 21, 1986 at p. 43). That same day an unverified Creditor's Petition to Join in Involuntary Petition was filed by Michael L. Testa, Esquire, as coun-

---

**2.** Both the motion by Elsub to dismiss the involuntary petition and the motion by PEI to add creditors to the involuntary petition were originally scheduled for hearing on October 17, 1986. At that time the court directed notice to all creditors of Elsub, including the creditors of ESA, of Elsub's motion to dismiss the involuntary petition. The hearing on both aforesaid matters was scheduled for November 21, 1986.

Counsel for PEI at the November 21, 1986 hearing argued that parties who had filed petitions for joinder should not be permitted to withdraw except by leave of court on notice and hearing to creditors. (See Transcript of November 21, 1986 at pp. 38–39). In fact, all creditors of Elsub, including ESA, received notice of the hearing on Elsub's motion to dismiss conducted on November 21, 1986.

sel for Mr. Samuel J. Del Rossi. That petition stated that Mr. Del Rossi's claim was for "breach of contract/wrongful discharge."

Beverly Coleman, appeared on her own behalf at the November 21, 1986 hearing and stated that she was present to "try and understand all this litigation." (Transcript of November 21, 1986, at p. 56). Ms. Coleman stated that she had filed a claim with the Equal Employment Opportunity Commission for wrongful termination of her employment by ESA. (Transcript of November 21, 1986, at pp. 57–58). No other creditors appeared in opposition to the motion.

At the November 21, 1986 hearing PEI also presented two verified Creditor's Petition To Join In Involuntary Petition as follows:

1. Creditors' Petition To Join In Involuntary Petition by Korey, Kay & Partners, Inc., executed by counsel for Korey, Kay & Partners on November 19, 1986 and filed with this court on November 21, 1986.

2. Creditor's Petition To Join In Involuntary Petition by Playboy Sales, Inc., executed by said petitioner on November 20, 1986 and filed with this court on November 21, 1986.

For the reasons which follow, this court finds that Elsub's motion to dismiss the involuntary petition on the grounds of an insufficient number of eligible petitioners should be denied. Playboy's motion to add creditors, however, cannot be finally determined at this time, since the court must first reach and rule on the issue of whether PEI filed the original single-creditor involuntary petition in good faith.

Section 303(b) of the Bankruptcy Reform Act of 1978, as amended by the Federal Judgeship Act of 1984, (Bankruptcy Code) provides:

(b) An involuntary case against a person is commenced by the filing with the bankruptcy court of a petition under chapter 7 or 11 of this title—

(1) by three or more entities, each of which is either a holder of a claim against such person that is not contingent as to liability or the subject on [sic] a bona fide dispute, or an indenture trustee representing such a holder, if such claims aggregate at least $5,000 more than the value of any lien on property of the debtor securing such claims held by the holders of such claims;

(2) if there are fewer than 12 such holders, excluding any employee or insider of such person and any transferee of a transfer that is voidable under section 544, 545, 547, 548, 549, or 724(a) of this title, by one or more of such holders that hold in the aggregate at least $5,000 of such claims.

Section 303(h) of the Bankruptcy Code further provides:

(h) If the petition is not timely controverted, the court shall order relief against the debtor in an involuntary case under the chapter under which the petition was filed. Otherwise, after trial, the court shall order relief against the debtor in an involuntary case under the chapter under which the petition was filed, only if—

(1) the debtor is generally not paying such debtor's debts as such debts become due unless such debts that [sic] are the subject of a bona fide dispute; or

(2) within 120 days before the date of the filing of the petition, a custodian, other than a trustee, receiver, or agent appointed or authorized to take charge of less than substantially all of the property of the debtor for the purpose of enforcing a lien against such property, was appointed or took possession.

Elsub in its motion to dismiss the Involuntary Petition takes the position that of the eight (8) parties who filed responses to the May 8, 1986 intervention notice only HBA East, Inc. holds an actual claim which is not contingent as to liability and is eligible to be a petitioning creditor under § 303(b)(1) and that that creditor has since

sought to withdraw its involuntary petition.[3]

The phrase "not contingent as to liability", contained in 11 U.S.C. § 303 is not defined by the Bankruptcy Code. Nonetheless, the term "contingent" refers to a distinct concept which has been judicially construed in cases under both the Bankruptcy Act and the Bankruptcy Code. *See, In re Albano,* 55 B.R. 363 (N.D.Ill.1985).

In construing the phrase "not contingent as to liability", courts have traced 11 U.S.C. § 303 back to its inception. Section 59(b) of the Bankruptcy Act of 1898, provided that:

> Three or more creditors who have provable claims against any person which amount in the aggregate, in excess of the value of securities held by them, if any, to five hundred dollars or over; or if all of the creditors of such person are less than twelve in number, then one of such creditors whose claim equals such amount may file a petition to have him adjudged a bankrupt.

Bankruptcy Act, ch. 541, 30 Stat. 544, 561 (1898). In 1938, Section 59(b) of the Bankruptcy Act was amended to provide that:

> Three or more creditors who have provable claims fixed as to liability and liquidated as to amount against any person which amount in the aggregate in excess of the value of securities held by them, if any, to $500 or over; or if all of the creditors of such person are less than twelve in number, then one of such creditors whose claim equals such amount may file a petition to have him adjudged a bankrupt.

Bankruptcy Act, ch. 575, 52 Stat. 840, 868 (1938).

Under these sections of the Bankruptcy Act, a claim was not rendered contingent as to liability merely because it was unmatured. The case of *In re Myers,* 31 F.Supp. 636 (E.D.N.Y.1940), was decided under the Bankruptcy Act as amended in 1938. In *Myers,* the court determined that holders of notes were properly petitioning creditors even though some of the notes were not due until after the involuntary petition was filed, because the obligations were "absolutely owing" at the time of the filing. *Accord, In re Trimble Co.,* 339 F.2d 838, 844 (3rd Cir.1964) (holder of corporate notes may be petitioning creditor even if payment of notes conditional); *Kay v. Federal Rubber Co.,* 46 F.2d 64 (3rd Cir.1930) (holder of trade acceptances which are not due until future date may be petitioning creditor).

In 1952, § 59(b) was amended to provide that:

> Three or more creditors who have provable claims liquidated as to amount and not contingent as to liability against any person which amount in the aggregate in excess of the value of securities held by them, if any, to $500 or over, or, if all of the creditors of such person are less than twelve in number, then one or more of such creditors whose claim or claims equal such amount, may file a petition to have him adjudged a bankrupt.

Bankruptcy Act, Pub.L. No. 456, § 16, 66 Stat. 420, 425 (1952). In 1962, § 59 was again amended to provide that:

> Three or more creditors who have provable claims not contingent as to liability against a person, amounting in the aggregate to $500 in excess of the value of any securities held by them, or, if all of the creditors of the person are less than twelve in number, then one or more of the creditors whose claim or claims equal that amount, may file a petition to have him adjudged a bankrupt; but the claim or claims, if unliquidated, shall not be counted in computing the number and the aggregate amount of the claims of the creditors joining in the petition, if the court determines that the claim or claims cannot be readily determined or estimated to be sufficient, together with the claims of the other creditors, to aggre-

---

**3.** These eight parties are Accent Limousine, Gertrude Silverstein, Beverly Coleman, Aecha Stanishewski, Wanda Williams, HBA East Inc., Stephen Canale and Wagman Andre Walker.

gate $500, without unduly delaying the decision upon the adjudication.

Bankruptcy Act, Pub.L. No. 87–681, § 7, 76 Stat. 570, 571 (1962).

Section 303(b) of the Bankruptcy Reform Act of 1978 permitted the filing of an involuntary petition:

> (b) An involuntary case is commenced by the filing with the bankruptcy court of a petition under chapter 7 or 11 of this title—
>
> (1) by three or more entities, each of which is either a holder of a claim against such person that is not contingent as to liability or an indenture trustee representing such a holder, if such claims aggregate at least $5,000 more than the value of any lien on property of the debtor securing such claims held by the holders of such claims;
>
> (2) if there are fewer than 12 such holders, excluding any employee or insider of such person and any transferee of a transfer that is voidable under section 544, 545, 547, 548, 549, or 724(a) of this title, by one or more of such holders that hold in the aggregate at least $5,000 of such claims.

11 U.S.C. § 303(b) (1978).

■ It is significant to note that under the Bankruptcy Reform Act of 1978 there was no longer a requirement that claims be provable in order for an involuntary petition to be brought. Thus, holders of unmatured, disputed and unliquidated claims are not specifically barred from being petitioning creditors. *See, e.g., Matter of Covey,* 650 F.2d 877, 881 (7th Cir.1981). The elimination of the requirement of a provable liquidated claim has been interpreted to evidence a Congressional policy in favor of a liberal taking of jurisdiction in an involuntary case. *See, e.g., In re Turner,* 32 B.R. 244, 248 (Bkrtcy.D.Mass.1983); *In re Elsub Corporation,* 66 B.R. 172, 178 (Bkrtcy.D.N.J.1986).

Finally, 11 U.S.C. § 303(b) was amended in 1984, upon the passage of the Bankruptcy Amendments and Federal Judgeship Act of 1984, to its present form which permits the filing of an involuntary petition in bankruptcy:

> (1) by three or more entities, each of which is either a holder of a claim against such person that is not contingent as to liability or the subject on [sic] a bona fide dispute, or an indenture trustee representing such a holder, if such claims aggregate at least $5,000 more than the value of any lien on property of the debtor securing such claims held by the holders of such claims;
>
> (2) if there are fewer than 12 such holders, excluding any employee or insider of such person and any transferee of a transfer that is voidable under section 544, 545, 547, 548, 549, or 724(a) of this title, by one or more of such holders that hold in the aggregate at least $5,000 of such claims.

11 U.S.C. § 303(b) (1984).

This statutory development has led at least one court to remark that bankruptcy parlance has connected the concept of contingency with the notion of liability *vel non,* and the concept of liquidation with the notion of reduction to an ascertainable dollar amount. *In re Albano,* 55 B.R. at 366.

The court in the case of *In re All Media Properties, Inc.,* 5 B.R. 126 (Bkrtcy.S.D. Tex.1980), *aff'd per curiam,* 646 F.2d 193 (5th Cir.1981) defined contingent claims as follows:

> claims are contingent as to liability if the debt is one which the debtor will be called upon to pay only upon the occurrence or happening of an extrinsic event which will trigger the liability of the debtor to the alleged creditor and if such triggering event or occurrence was one reasonably contemplated by the debtor and creditor at the time the event giving rise to the claim occurred.

5 B.R. at 133, *cited with approval in, Matter of Gill Enterprises, Inc.,* 15 B.R. 328, 331 (Bkrtcy.D.N.J.1981). *Accord, In re Johnston Hawks, Ltd.,* 49 B.R. 823, 829 (Bkrtcy.D.Hawaii 1985); *In re McMeekin,* 16 B.R. 805, 807 (Bkrtcy.D.Mass 1982). Courts have concluded that the phrase

claims "not contingent as to liability," as contained in 11 U.S.C. § 303, incorporates the ordinary meaning of a contingent claim, which is a claim that has not accrued and that is dependent upon a future event. *See, e.g., In re Dill,* 30 B.R. 546, 548 (Bkrtcy. 9th Cir.1983), *aff'd,* 731 F:2d 629 (9th Cir.1984); *In re McNeil,* 13 B.R. 434, 436 (E.D.Tenn.1981).

In attempting to construe the phrase "not contingent as to liability", the court in *In re All-Media Properties, Inc.,* looked to "classic" examples of contingent liability. One example cited by that court is guarantors of promissory notes who are secondarily liable for principal debtors' obligations. Guarantors, by definition, are only liable if the principal debtor defaults. Another classic example of contingent liability cited by the *All-Media* court is the liability of a defendant in a negligence action, where the parties, at the time of the alleged negligent act, contemplated that the alleged tortfeasor would be liable only if found to be so by a competent tribunal. 5 B.R. at 133. Courts have also noted that contingent liability as referred to in the Bankruptcy Code may be created by "aleatory contracts." Examples of aleatory contracts are insurance and guaranty contracts, pursuant to which, the insurer's or guarantor's obligation to perform does not arise until there is a loss or default. *See, In re Albano,* 55 B.R. 363 (N.D.Ill.1985).

The case of *In re Blehm,* 33 B.R. 678 (Bkrtcy.D.Colo.1983), also looked to guaranty/surety situations and tort claims in defining contingent debts. In *Blehm,* several creditors of a corporation operated by Chapter 13 debtors filed proofs of claim against the individual debtors. The creditors alleged that the individual debtors operated the corporation as a sham and that therefore the creditors of the corporation should be allowed to "pierce the corporate veil" and assert their claims directly against the debtors. Permitting such claims would render the debtors ineligible for Chapter 13 relief pursuant to 11 U.S.C. § 109(e). Chapter 11 U.S.C. § 109(e) provides that individuals are eligible for Chapter 13 relief if they incur "noncontingent,

liquidated, unsecured debts of less than $100,000." The *Blehm* court held that the veil-piercing claims were contingent and should not be included in the computation of the individuals' indebtedness under 11 U.S.C. § 109(e). In so holding, the court stated:

> The classic examples of contingent debts are the guarantor/surety situations and a tort claim on which no judgment has been entered. The guarantor situation is obvious—there liability is dependent on a future uncertain event—the default of the primary obligor. Tort claims have been considered contingent because they require proof by the plaintiff creditor of the debtor's liability and the amount of damages are, by their very nature, not fixed unless and until a judgment is entered setting the debtor's liability.

33 B.R. at 679–80.

In the case at bar the claims asserted by Beverly Coleman, Aecha Stanishewski, Gertrude Silverstein, Stephen Canale, Wayman Andre Walker and Samuel J. Del Rossi in their joinder petitions assert various claims against Elsub or ESA based upon discriminatory conduct, wrongful discharge or termination of employment and personal injury claims. These claims have not been fixed by any judgment and require proof by these creditors of Elsub's or ESA's liability, rendering these claims contingent as to liability as that term is contained in 11 U.S.C. § 303(b). Accordingly, these creditors are not eligible to join in the Involuntary Petition. As of the date of the November 21, 1986 hearing, no petition for joinder was filed by Accent Limousine.

Elsub argues that Wanda Y. Williams is not an eligible petitioning creditor on the grounds that the Form No. 11 Creditor's Petition was not verified, and her claim described in the Creditor's Petition as "former employee layoff subject to recall" is unliquidated and disputed. Holders of disputed and unliquidated claims are not specifically barred from being petitioning creditors. *See Matter of Covey,* 650

F.2d 877, 881 (7th Cir.1981). Williams and Aecha Stanishewski, both former employees of ESA, were listed in ESA's Schedule A–3E as holding disputed unliquidated unsecured claims. Williams, along with Aecha Stanishewski, Beverly Coleman, Gertrude Silverstein, Stephen Canale, Wayman Andre Walker and Accent Limousine, were notified of the objection by Elsub to their eligibility to join in the involuntary petition and the instant Motion to Dismiss the Involuntary Petition. Williams, Stanishewski, Silverstein, Canale, Walker and Accent Limousine failed to appear on two separate occasions in defense of their petitions or filings with this court, on October 17, 1986, the originally scheduled hearing date on Elsub's Motion to Dismiss the Involuntary Petition, and on November 21, 1986, the rescheduled hearing date on the Motion to Dismiss. These creditors, having failed to go forward on their Creditor's Petition or other filings will not at this time be granted permission by this court to join in the Involuntary Petition.

In connection with the petitions filed by HBA East, Inc., Uniforms To You & Co., Inc., Recycled Paper Products, Inc. and Enesco Imports Corp., applications to voluntarily withdraw those petitions are before this court.

PEI asserts as a threshold matter that an eligible petitioning creditor cannot voluntarily withdraw from an involuntary petition if its withdrawal would result in the defeat of the involuntary petition and that such withdrawal should be allowed only after notice to creditors and a hearing to determine if the interests of creditors would be affected.

Preliminarily, it should be noted that all creditors of Elsub, including ESA, received notice of the November 21, 1986 hearing on Elsub's motion to dismiss the involuntary petition.

Courts have held as a general rule that if a creditor is an eligible petitioning creditor, that creditor cannot withdraw if its withdrawal would result in the defeat of the involuntary petition. *See e.g. Sheehan & Egan, Inc. v. North Eastern Shoe Co.*, 47 F.2d 487 (1st Cir.1931); *In re Ross*, 63 B.R. 951, 962 (Bkrtcy.S.D.N.Y.1986); *In re Claxton*, 21 B.R. 905 (Bkrtcy.E.D.Va.1982); 2 Colliers on Bankruptcy, paragraph 303.-37[3] (15th Ed.1986).

The general rule as articulated by the court in *Sheehan & Egan v. North Eastern Shoe Co.* is as follows:

> an original petitioner, or one who has intervened and been permitted to join, cannot be allowed to withdraw to defeat the petition against the objection of his co-petitioners.

47 F.2d at 489. In *Sheehan*, three creditors filed an involuntary petition in bankruptcy against the debtor. The alleged debtor filed an answer denying that it had committed an act of bankruptcy and also filed a petition to dismiss the involuntary petition. One of the original petitioning creditors did not appear at the hearing on the answer and the motion to dismiss at which time the petition was dismissed. The final decree of the district court recited, *inter alia*, that one of the petitioning creditors had informed the court that he was withdrawing his name from the petition. *Id.* at 488–89. The debtor had allowed this creditor to take away the equipment he had sold to the debtor and the creditor had accepted the property in full satisfaction of his claim. *Id.* at 489. The First Circuit Court of Appeals on an appeal of the district court's decree dismissing the involuntary petition held that although other creditors are allowed to join in between the time of the filing of the involuntary petition and the time of the hearing, one of the original petitioning creditors could not be permitted to withdraw to defeat the petition. *Id.* The court held that the fact that the creditor had settled his claim against the debtor after the petition was filed was immaterial. *Id.*

This rule is based upon the principle that an involuntary petition protects all creditors of the debtor, not only those presently before the court. The policy is also aimed at avoiding collusion between petitioners and the debtor, such as where a debtor could induce a self-seeking petitioner to

accept payment of that petitioner's claim and withdraw from the petition. *See Matter of Claxton,* 21 B.R. 905, 908–09 (Bkrtcy.E.D.Va.1982).

The court in *Sheehan, supra* distinguished a petition originally defective in the requisite number of petitioning creditors:

> When an involuntary petition is defective in its allegations or is wanting in the requisite number of petitioning creditors, it probably is discretionary with the court whether it will allow the petition to be amended or will extend the time for other creditors to intervene, or will dismiss the petition. But, when the allegations of the petition are adequate, and the requisite number of petitioning creditors have joined, and these facts and allegations are established, it is the duty of the court to adjudicate.

47 F.2d at 490.

The court, in the case of *Moulton v. Coburn,* 131 F.201 (1st Cir.1904), *cert. denied* 196 U.S. 640, 25 S.Ct. 796, 49 L.Ed. 631 (1905), made a similar distinction. In *Moulton,* the original petition in an involuntary bankruptcy was filed by a single creditor alleging there were less than 12 creditors. It was determined that, at the date of filing, there were about 30 creditors. *Id.* at 201. After the answer was filed setting up the existence of some 30 creditors, another creditor, the Tripp Grant Leveler Company (Tripp), filed an intervening petition seeking to join in the proceedings and become a petitioning creditor. *Id.* at 201–02. Subsequently, Tripp filed a second petition "asking 'that it may be allowed to withdraw its petition to join in the petition against the above-named bankrupts, and become one of the petitioning creditors.'" *Id.* at 202. The district judge held that the joinder in the petition was under a misunderstanding or mistake of fact and, as an exercise of discretion, granted the petition to withdraw. The First Circuit, in upholding the district court judge, reasoned that:

> The present case, however, differs essentially from a case in which one of three original petitioners in involuntary bankruptcy seeks to withdraw, and thereby to impair the rights of his co-petitioners. There had been no express joinder in the original petition, but merely a petition that the Tripp Company be allowed to join, and a withdrawal of this petition before any final action of the court, making it a party to the original petition.

131 F. at 202.

It is clear herein that the right of HBA East, Inc., Uniforms To You & Co., Inc., Recycled Paper Products, Inc. and Enesco Imports Corp. to become petitioning creditors was not free from doubt, and at the very least a contestable right. Prior to this court granting joinder, these creditors, through their representatives or counsel have sought to voluntarily withdraw their petitions. The circumstances herein clearly permit the withdrawal of these four (4) creditors' petitions for joinder previously filed in this case.

With respect to the Creditor's Petition To Join In Involuntary Petition filed by Korey, Kay & Partners, Inc. and Playboy Sales, Inc., Korey, Kay & Partners, Inc. was included in the list of creditors annexed to the voluntary Chapter 11 petition filed by ESA on November 14, 1985 and listed therein as one of twenty largest unsecured creditors of ESA, excluding insiders and governmental entities. The A–3 schedules of unsecured liquidated accounts payable filed by ESA on April 3, 1986 included Korey, Kay & Partners, Inc. as a creditor in the amount of $226,965.49. Korey, Kay & Partners, Inc. is a member of the Official Unsecured Creditors' Committee of ESA.

Playboy Sales, Inc., by its Creditor's Petition To Join In Involuntary Petition, asserts that it is a creditor of Elsub, holding a claim in the amount of $5,311.93. This debt arises from sales by Playboy Sales, Inc. to Playboy-Elsinore Associates, predecessor to ESA, as reflected by a certain Invoice Statement submitted as part of the joinder petition. Elsub offered no evidence that either of these debts have been paid or that there is otherwise no liability. More-

over, decisional law indicates that " 'in an ordinary debt arising from, for example, a sale of merchandise, the parties to the transaction would not at that time view the obligation as contingent. Subsequent events might lead to a dispute ... but would not make [the debt] a contingent one.' " *In re North County Chrysler Plymouth, Inc.*, 13 B.R. 393, 397 (Bkrtcy. W.D.Mo.1981), *citing In re All-Media Properties, Inc.*, 5 B.R. 126, 133 (Bkrtcy.S. D.Tex.1980).

Elsub, however, argues that this court should not consider the Joinder Petitions filed by these two creditors on the basis that the petitions were filed outside of the deadlines contained in this court's order of February 28, 1986, and the May 8, 1986 Intervention Notice. PEI does not dispute the fact that Korey, Kay & Partners Inc., a member of the Unsecured Creditors' Committee of ESA, was listed on the original list of creditors and received the May 8, 1986 Intervention Notice. Nor does PEI raise as a defense that Playboy Sales Inc. had no knowledge of the Elsub involuntary petition filed on November 13, 1985. Instead, PEI asks that this court, notwithstanding the expiration of the deadlines contained in the Intervention Notice, recognize the two joinder petitions filed herein.

It is generally held that intervention in an involuntary petition is timely until an order for relief is entered or a case is dismissed. *See In re Nazarian*, 5 B.R. 279, 281 (Bkrtcy.D.Md.1980); *In re Trans-High Corporation*, 3 B.R. 1 (Bkrtcy.S.D. N.Y.1980). Section 303(c) of the Bankruptcy Code provides:

(c) After the filing of a petition under this section but before the case is dismissed or relief is ordered, a creditor holding an unsecured claim that is not contingent, other than a creditor filing under subsection (b) of this section, may join in the petition with the same effect as if such joining creditor were a petitioning creditor under subsection (b) of this section.

The legislative history of Section 303(c) reveals in this regard:

Subsection (c) permits creditors other than the original petitioning creditors to join in the petition with the same effect as if the joining creditor had been one of the original petitioning creditors. Thus, if the claim of one of the original petitioning creditors is disallowed, the case will not be dismissed for want of three creditors or want of $5,000 in petitioning claims if the joining creditor suffices to fulfill the statutory requirements.

H.Rep. 95–595, 95th Cong. 1st Sess., 322 (1977), U.S.Code Cong. & Adm.News, 1978, p. 5787, 6279.

Bankruptcy Rule 1003 further provides in pertinent part:

(a) *Commencement.* A petition commencing an involuntary case shall be filed with the bankruptcy court and shall conform substantially to Official Form No. 11.

.    .    .    .    .

(d) *Joinder of Petitioners After Filing.* If the answer to an involuntary petition filed by fewer than three creditors avers the existence of 12 or more creditors, the debtor shall file with the answer a list of all creditors with their addresses, a brief statement of the nature of their claims, and the amounts thereof. If it appears that there are 12 or more creditors as provided in § 303(b) of the Code, the court shall afford a reasonable opportunity for other creditors to join in the petition before a hearing is held thereon.

This court has reviewed the terms of both its February 28, 1986 order and the May 8, 1986 Intervention Notice. The February 28, 1986 order, consented to by PEI and Elsub, provided that "such Petition for Joinder shall be of no force and effect unless (a) such Petition for Joinder is served and filed within the time allowed herein, and (b) the Court determines that the Involuntary was not filed in bad faith, and (c) the Court grants a motion by Playboy to amend the Involuntary Petition to add the creditor named in such petition for Joinder." While the February 28, 1986 or-

der provided a deadline for the filing of joinder petitions, neither Section 303(c) of the Bankruptcy Code or Bankruptcy Rule 1003 contain a time limitation for filing petitions for joinder except for the requirement that such petition be filed before an order for relief is entered or the case dismissed. Accordingly, this court must be guided by principles of reasonableness bearing in mind the dual policy in proceedings of this kind to move such proceedings forward expeditiously while at the same time affording petitioning creditors adequate opportunity to protect their interest. *See e.g. Hydromechaniki S.A. v. MacDonald Construction Company,* 511 F.2d 475 (8th Cir.1975). In the *Hydromechaniki* case, two creditors filed an involuntary petition against the debtor. In its answer, the alleged debtor alleged that it had at least 24 creditors and listed these creditors in its answer. The court caused notice to be sent to these creditors and a hearing was scheduled to determine if the alleged debtor had more than 12 creditors. By the date of the hearing, no other creditors had joined and only the two original petitioning creditors appeared at the hearing. The petition was dismissed on the grounds that insufficient creditors had joined in the petition. The two creditors had made no effort to contact the list of creditors between the time the list was filed and the date of the hearing. On the appeal of an order of the district court affirming an order of the bankruptcy court denying reconsideration and to amend and set aside the order of dismissal, the two creditors argued it would have been improper for them to contact the creditors listed by the alleged debtor in its answer. The court of appeals held that in the absence of bad faith or fraud, there was no impropriety involved in inducing creditors to join in an involuntary petition. 511 F.2d at 476. The court of appeals further noted that "Proceedings such as these should be handled expeditiously. The petitioning creditors were given an adequate opportunity to protect their interests at the hearing and failed to do so." 511 F.2d at 477.

In the case of *Penn Central Transportation Co.,* 771 F.2d 762 (3d Cir.) *cert. denied sub nom. Pinney Dock & Transport Co. v. Penn Central Corp.,* —— U.S. ——, 106 S.Ct. 596, 88 L.Ed.2d 576 (1985), the Third Circuit affirmed a decision of the district court denying a creditors' petition for leave to pursue antitrust action in another forum in a railroad reorganization where the creditors failed to follow claim procedures instituted by the court. In *Penn Central,* the debtor, Penn Central Transportation Company (PCTC) filed a petition for railroad reorganization pursuant to Section 77 of the Bankruptcy Act, formerly codified at 11 U.S.C. § 205 (repealed 1978). The two appellants, Pinney Dock & Transport Company ("Pinney") and Litton Industries, Inc., Litton Systems Inc., Litton Great Lakes Corporation, and Erie Marine, Inc. ("Litton"), received notice requiring all proofs of claims against PCTC arising prior to the date of the reorganization, with specific exceptions, to be filed by June 1, 1971. A subsequent procedure was established for creditors who had received notice of the proof of claim requirement and who had failed to comply with the June 1, 1971 bar date to show cause by September 17, 1972 why their claims should not be excluded from the Plan of Reorganization. Although Pinney and Litton received copies of both notices, Pinney did not participate in the proof of claim procedure and Litton filed a proof of claim not based on alleged antitrust violations. The court subsequently entered a Confirmation Order and a Consummation Order, the latter which constituted the final decree in the reorganization process. Notwithstanding the discharge and injunctive provisions of Section 77(f) of the Bankruptcy Act and the Consummation Order, Pinney & Litton subsequently filed actions in the United States District Court alleging violations of the antitrust laws against Penn Central Corporation ("PCC") the reorganized company formed in the railroad reorganization proceedings, its predecessor railroad companies and five other railroads. In its complaint, Pinney alleged that the defendants effectively prevented it from handling iron ore at the

Pinney dock in Ashtabula, Ohio, because from the middle 1950's throughout the 1970's, they were members of a conspiracy to deny it a competitive rail line haul rate. Litton alleged in its complaint that, by 1973, it had been driven out of the business of building self-unloading vessels because from the middle 1960's the members of the conspiracy would not handle Litton's ships at their docks, had unreasonably high unloading charges, and/or would not enter a leasing or purchasing agreement to allow Litton to use dock facilities which could accommodate Litton ships. 771 F.2d at 765. In the antitrust action the district court granted PCC partial summary judgment as to alleged anticompetitive acts occurring after the October 24, 1978 consummation date. As to those allegations based upon the action of PCTC or its predecessors, the district court found that under the Consummation Order Pinney and Litton would have to obtain the permission of the reorganization court prior to any further prosecution of their antitrust claims against PCC. 771 F.2d at 766. The reorganization court, on subsequent application by Pinney and Litton to pursue their antitrust action against PCC, found that Pinney and Litton could not ignore Section 77(f) of the Bankruptcy Act and that PCC could be liable for PCTC's debts only as provided for in the Plan. *Id.* Pinney and Litton argued on appeal that their claims were unknown and undisclosed to them during the reorganization proceeding due to PCTC's fraudulent concealment of the conspiracy. Pinney and Litton also sought an exception from the Consummation Order on the basis that they did not receive constitutionally adequate notice in the reorganization proceedings because they were not effectively advised of the effect that the reorganization would have on them and that they had established sufficient grounds for equitable relief from the order under Fed.R.Civ.P. 60(b)(3) and (6). The Third Circuit Court of Appeals held that:

> ... Pinney and Litton 1) received mail notice of the proof of claim program and the bar date, 2) chose whether or not to participate in the reorganization proceed-

ings as to their other claims, and 3) sought relief from the district court long after the consummation of reorganization. They further admit that the trustees did not know any facts about the alleged conspiracy. Under these circumstances, we agree with the district court that effect must be given to the policy of finality in section 77 reorganizations and we find that Pinney and Litton received all the notice that they were due under the Constitution.

*Id.* at 769.

In the case at bar, the involuntary proceeding is still pending before this court, no order for relief having been entered or order of dismissal granted. The policy of finality ennumerated in the *Penn Central* case is not appropriate to the case at bar.

Nor will this court otherwise disqualify these two joinder petitions before it on procedural or other technical grounds. The court in the case of *In re North County Chrysler Plymouth, Inc.*, 13 B.R. 393 (Bkrtcy.W.D.Mo.1981) analyzed the historical development of Section 303 of the Bankruptcy Reform Act of 1978. The court stated:

> "The purpose of an involuntary proceeding ... is to secure an equitable distribution of the assets of the alleged debtor among all his creditors." [citations omitted]. By eliminating the need to have a provable, liquidated claim, the Congress has stated a policy in favor of a liberal taking of jurisdiction in involuntary cases. Resolutions of disputes concerning claims is left to a later time. [citation omitted].

13 B.R. at 399.

The court in *In re North County Chrysler Plymouth Inc., supra,* further remarked:

> While the applications to join as petitioning creditors are not artfully drawn, the sense of the creditor's intention is clear. The Court has no authority to deny intervention if the application to intervene is timely and the creditor otherwise qualifies. *In re Accord Ventilat-*

*ing Company*, 221 F.2d 899 (7th Cir. 1955).

> "Intervention is a matter of right unless the bankruptcy court finds the petition was made in bad faith for the purpose of improperly invoking its jurisdiction. Good faith is presumed and the burden of showing bad faith rests on the alleged bankrupt ...
>
> "Clearly the purpose of the statute and the rule [Section 59 of the Act, Section 95, Title 11, Rule 104] is to faciliate bankruptcy proceedings regardless of the correctness of the originating petition." *In re Crown Sportswear*, 575 F.2d 991, 993 (1st Cir.1978).

13 B.R. at 399–400.

The Bankruptcy Amendments and Federal Judgeship Act of 1984 amended Section 303 of the Bankruptcy Code to add the requirement that an eligible petitioning creditors' claim not be "the subject of a bona fide dispute." There is no definition of "bona fide dispute" in the Bankruptcy Code. The court in *In re Ross*, 63 B.R. 951 (Bkrtcy.S.D.N.Y.1986) noted that several definitions have been employed by courts:

> This court has already stated that the simplicity of the "bona fide dispute" language is deceptive, *see In re Drexler*, 56 B.R. 960, 966 (Bankr.S.D.N.Y.1986), and substantial interpretative problems are presented. One court dealing with the issue has held that if the defense of the alleged debtor to the claim of the petitioning creditor raises material issues of fact or law so that
>
> > "a summary judgment could not be rendered as a matter of law in favor of the creditor on a trial of the claim, the claim is subject to a bona fide dispute."
>
> *In re Stroop*, 51 B.R. 210, 212 (Bankr.D. Colo.1985). Another court grappling with the issue has held:
>
> > "A bona fide dispute is a conflict in which an assertion of a claim or right made in good faith and without fraud or deceit on one side is met by contrary claims or allegations made in good faith and without fraud or deceit on the other side."

*In re Johnston Hawks, Ltd.*, 49 B.R. 823, 830 (Bankr.D.Ha.1985).

This court has held that

> "[a] general answer may be given that a claim based upon an unstayed judgment as to which an appeal has been taken by the debtor is not the subject of a bona fide dispute. * * *
>
> "It would be contrary to the basic principles respecting, and would effect a radical alteration of, the long-standing enforceability of unstayed final judgments to hold that the pendency of the debtor's appeal created a 'bona fide dispute' within the meaning of Code § 303."

*In re Drexler, supra*, 56 B.R. at 967.

63 B.R. at 958–59.

After reviewing the bona fide dispute standards, the *Ross* court concluded:

> Undue weight cannot be placed on the nature of the claims held by the petitioners as the debtor's true protection against an improvident involuntary petition lies in the independent requirement of Code § 303(h) that it be established that the debtor is generally not paying its debts as they become due. In its final analysis before entering an order for relief, the court must test its result by balancing the interests of the creditors against those of the debtor before entering an order for relief on an involuntary petition if the debtor disputes the petitioners' claims.

63 B.R. at 961–62.

In the case herein, Elsub has not asserted nor does the record in this case reveal that the claims of Korey, Kay & Partners Inc. and Playboy Sales, Inc. are the subject of a bona fide dispute.

Accordingly, the court finds that there are at least two creditors of Elsub, other than PEI, those creditors being Korey, Kay & Partners, Inc. and Playboy Sales, Inc., holding claims against Elsub not contingent as to liability or the subject of a bona fide dispute, eligible under Section 303(b) to file an involuntary petition against Elsub, who have filed a petition for joinder in

accordance with the terms of this court's February 28, 1986 order and the May 8, 1986 Intervention Notice.[4]

Under both the Bankruptcy Act and the Bankruptcy Code, intervention in an involuntary petition has been held to be a matter of right. *See, e.g., In re Thomas,* 211 F.Supp. 187, 193 (D.Colo.1962) *aff'd sub nom. Thomas v. Youngstown Sheet and Tube Co.,* 327 F.2d 667 (10th Cir.) *cert. denied* 379 U.S. 827, 85 S.Ct. 55, 13 L.Ed.2d 36 (1964); *Matter of Trans-High Corp.,* 3 B.R. 1, 4 (Bkrtcy.S.D.N.Y.1980).

■ With regard to the issue of joinder of creditors, courts have held that a prerequisite to allowing joinder of additional creditors to cure a defective petition is that the original petition was filed in good faith. *See, e.g., Basin Electric Power Cooperative v. Midwest Processing Company,* 769 F.2d 483 (8th Cir.1985) *cert. denied,* — U.S. —, 106 S.Ct. 854, 88 L.Ed.2d 894 (1986); *In re Rite-Cap, Inc.,* 1 B.R. 740, 741 (Bkrtcy.D.R.I.1979).

Accordingly, intervention may be disallowed where the court finds that the petition was filed in bad faith or for the purpose of improperly invoking the bankruptcy court's jurisdiction. *See, In re Thomas, supra.* So long as intervention is permissible, the bankruptcy court retains jurisdiction over an involuntary proceeding which was commenced with an insufficient number of petitioners. *See, e.g., In re Mason,* 709 F.2d 1313, 1318–19 (9th Cir.1983); *In re Earl's Tire Service, Inc.,* 6 B.R. 1019, 1022 (D.Del.1980); *In re Midwest Processing Co.,* 41 B.R. 90, 102 (Bkrtcy.D.N.D. 1984). Accordingly, this court will not enter an order dismissing the Involuntary Petition for lack of jurisdiction. Instead, the court will retain jurisdiction over the involuntary petition presently before the court.

Whether intervention by these creditors will be allowed cannot be finally determined until this court has ruled upon whether the filing of a single-creditor involuntary petition by PEI was done in good faith. Hearings on that issue will go forward as scheduled by the court.

An order shall be submitted in accordance with this opinion.

---

4. Since the close of the November 21, 1986 hearing, Joinder Petitions have been filed by T.C.B. Air, Waszen Container Service, Rochester Men's Formal Wear Inc., A.C. Stage Lighting Co., Austino's Lift Trucks, Inc., Michael B. Weiss Advertising Inc., Wilmington Piano Company, Antigua Sportswear Inc., 7–Up Bottling Company of Bridgeton, Inc., Fortune Gypsum Products Inc., Classic Limosine Service Ltd., Red the Uniform Tailor, Inc., American B.D. Liquor Company, Perfecttype Inc., Tesco Distributors, Inc., Kammson Industries, Inc., Display House Inc., Impax Marketing Communica-

tions Div. of Display House, Inc., Weidas Travel, South Jersey Publishing Company d/b/a The Press, Rees Import, Inc., Jack Raskin Upholstery Services, Executive Business Products, The Gibbens Company, Inc., A.C. Display Studios, Inc., SQN Peripherals, Inc., Ace Auto Supply Co., and Ascot Sales Corp. This court's decision to retain jurisdiction is based upon a consideration of the petitions before the court on November 21, 1986. The court does not pass at this time upon the subsequent petitions for joinder filed after November 21, 1986.