**In re PARIS INDUSTRIES CORPORATION, Vitro Agate Corporation, Otselic Enterprises, Inc., Stylecrafters Corporation, Gladding Cordage Corporation, Debtors.**

**Bankruptcy Nos. 87–20111 through 87–20115.**

United States Bankruptcy Court, D. Maine.

Aug. 24, 1989.

James Liston, Kaye Fialkow Richmond & Rothstein, Boston, Mass., for trustee.

David A. Munro, Ann Goldweber, Robert Abrams, Atty. Gen., Albany, N.Y. for State of N.Y.

C. Hall Swaim, A. Davis Whitesell, Hale and Dorr, Boston, Mass., for former Directors and/or Officers of debtor Paris Industries Corp. and/or debtor Gladding Cordage Corp.

Charles L. Glerum, Choate, Hall & Stewart, Boston, Mass., for State Street Bank.

## MEMORANDUM OF DECISION

FREDERICK A. JOHNSON, Chief Judge.

## INTRODUCTION

On April 10, 1987, the Debtors filed for relief under Chapter 11 of the Bankruptcy Code. On May 26, 1987, a Chapter 11 Trustee was appointed.

On December 27, 1988, the trustee filed a motion for authorization to enter into an agreement regarding the sale of certain real estate in South Otselic, New York and the settlement of certain claims (the settlement agreement). This contested matter is before the court on an objection to the trustee's motion filed by certain of the former directors and officers (collectively, the "Objecting Parties") of the debtor Gladding Cordage Corporation (Gladding) and/or the debtor Paris Industries Corporation (Paris).[1]

Among the terms of the proposed settlement agreement, the State of New York (NYS) has agreed to release or otherwise limit the potential liability of certain individuals and entities, including Gladding and Paris, in connection with the cost of the environmental clean-up at Gladding's Otselic facility. The proposed agreement does not provide for any release of the former officers and directors of Paris and/or Gladding. As a result, NYS has reserved whatever rights it has to look to these former officers and directors for the costs of clean-up. The Objecting Parties have protested against their specific exclusion from the releases provided by NYS and have urged this court, on various grounds, to reject the proposed agreement.

Hearing was held, and the parties have extensively briefed the issues.

## FACTS

At the time of the filing of the petition, Gladding an affiliate of Paris, operated a manufacturing facility at South Otselic, New York. The real estate at the Gladding facility consists of a seven acre parcel of land, with various buildings and structures (the property). The property has been environmentally damaged. The damage consists of ground water contamination and discharges of hazardous chemicals located on the site.

By order dated August 5, 1987, this court authorized the sale of Gladding's personal property situated at South Otselic, New York to Continental Cordage Corporation (Continental) free and clear of liens and encumbrances for the purchase price of $475,000.00.[2] Valid liens and encumbrances were to attach to the proceeds.

State Street Bank and Trust Company (State Street) was owed in excess of $10 million (as of July 10, 1987), secured by valid and perfected first mortgages and security interests in all of the debtors' assets. See In re Paris Industries Corp., 80 B.R. 2, 3 (Bankr.D.Me.1987). NYS had asserted an unliquidated contingent claim for the cost of remediation, which was estimated at an amount in excess of $1 million. NYS objected to the payment of the $475,000.00 in proceeds from the sale of the personal property to State Street. By order dated December 7, 1987, the court instructed the trustee to pay the proceeds to State Street. On January 5, 1988, NYS filed a notice of appeal. The court has subsequently granted NYS several enlargements of time to file the record on appeal and statement of issues, pending possible approval of the proposed settlement agreement.

Gladding Braided Products, Inc. (GBP), the trustee, NYS, and State Street are the only parties to the settlement agreement now before the court. Among the terms of the proposed agreement, the trustee proposes to sell the property to GBP, an affil-

---

1. In the original objection, filed on January 18, 1989, the Objecting Parties were identified as J. Gerald Mayer, David Johnson, Clifford Parsons, Arthur Abramson and Marie Morvan. On January 25, 1989, a restated objection was filed to indicate that Parsons had withdrawn as an "Objecting Party". The Parties have objected "indi-vidually and on behalf of all other similarly situated former directors and officers" of Gladding and/or Paris.

2. Some of the personal property was located at Cuyler, New York.

iate of Continental, for a purchase price of $160,000.00 free and clear of liens and encumbrances. The parties to the agreement also propose to settle the rights, obligations and claims asserted against each other.

State Street currently holds a valid first mortgage on the property in the approximate amount of $2 million. It also holds postpetition security interests and liens in all of the Debtors' assets, including the real estate. The debt far exceeds the value of the property, which has been estimated at between $500,000.00 and $1 million, if clean.

NYS has hired a consulting engineering firm to conduct a remedial investigation/feasibility study (the study), at an estimated cost of $750,000.00. The purpose of the study is to document the extent of contamination and to select a remediation program. Subsequently, the remedial program which is chosen will have to be carried out.

The pertinent provisions of the proposed settlement agreement can be summarized as follows:

(1) *Distribution of Proceeds From Sale of the Real Estate* [3]

Of the total price of $160,000.00, GBP will pay the trustee $75,000.00 in cash. The trustee will immediately turn over the $75,000.00 to NYS. NYS will use those funds to pay for the removal of barrels of hazardous materials, presently stored on the property.

GBP will pay the balance of $85,000.00 in the form of a promissory note, executed in favor of the trustee, and secured by a first priority purchase money mortgage. The mortgage is payable in full, in a lump sum, without interest, three years from the closing date.

(2) *GBP Obligations in Connection With the Remediation*

Certain obligations are assumed by GBP: it has agreed to submit and carry out a plan for the replacement and capping, removal and/or disposal of existing septic tanks. It has also agreed to construct a self-contained sanitation treatment system.

(3) *Releases Given by NYS*

Relative to the environmental cleanup, NYS has agreed to limit its recovery to the lesser of: "(i) the amount of any such Claims asserted by NYS; or (ii) twenty-five percent of the proceeds of any recoveries that are made available to the estates of the Debtors, Paris ... and Gladding ..." The trustee, the affected bankruptcy estates, the Debtors, and any future "officers, directors, stockholders, [and] employees ... of any of the Debtors" are the beneficiaries of the limited liability portion of the agreement. Any "former officers, directors, stockholders, [and] employees ..." are specifically excluded as beneficiaries.

NYS will provide State Street with what appears to be a general release of claims, in connection with the environmental problems at the Otselic facility.[4] NYS specifically will release State Street from any claims it might assert to the $475,000.00 in proceeds from the sale of personal property, in connection with which NYS had filed a notice of appeal.

## DISCUSSION

### A. Background

Two important governmental concerns are at stake in this proceeding. The Bankruptcy Code embodies a governmental policy favoring reorganization and a fresh start. The discharge of prefiling obligations and the abandonment or rejection of burdensome property or contracts are among the methods provided for to accomplish that result. Federal and state environmental laws embody society's interest in protecting the environment and the health and safety of its inhabitants. To the

---

**3.** The court has supplied subdivisions to the proposed agreement for the purposes of clarity.

**4.** State Street initially objected to the motion because NYS refused to specify in its release the circumstances under which it would seek EPA involvement. State Street subsequently withdrew its objection. However, State Street reserved the right to assure itself that the release was in the form agreed to.

extent possible, these two sometimes competing objectives should be reconciled. *See In re Distrigas Corp.,* 66 B.R. 382, 384 (Bankr.D.Mass.1986).

It is clear that the property is burdensome and of inconsequential value to the estate. *See* 11 U.S.C. § 554(a). At the hearing the trustee suggested that given any situation other than an environmentally damaged property, he would have requested this court to approve its abandonment. Essentially, the trustee is using the sale of the property as a means of transferring it out of the estate.

Although the issue of abandonment is not before the court, cases which have considered that issue in connection with environmentally damaged property are instructive in evaluating the settlement agreement.

The leading case on abandonment of a hazardous waste site is *Midlantic National Bank v. New Jersey Department of Environmental Protection,* 474 U.S. 494, 106 S.Ct. 755, 88 L.Ed.2d 859, *reh'g denied,* 475 U.S. 1090, 106 S.Ct. 1482, 89 L.Ed.2d 736 and 475 U.S. 1091, 106 S.Ct. 1482, 89 L.Ed.2d 736 (1986). In *Midlantic,* the Supreme Court concluded that the "Bankruptcy Court does not have the power to authorize an abandonment without formulating conditions that will adequately protect the public's health and safety." *Id.* 474 U.S. at 507, 106 S.Ct. at 762 (*quoted in In re Stevens,* 68 B.R. 774, 781 (D.Me.1987)). However the Supreme Court did not address, how, as a practical matter, a trustee can comply with the applicable environmental laws or adequately protect the public health and safety, without funds in the estate to do so. *See In re 82 Milbar Boulevard, Inc.,* 91 B.R. 213, 218 (Bankr.E.D. N.Y.1988). This proposed settlement agreement provides a practical answer. Under the particular circumstances of this proceeding, the court now concludes that the objections of the former officers and directors must be overruled.

### B. Exclusion of Former Officers and Directors

The Objecting Parties argue that any future claims asserted by NYS against the former officers and directors will give rise to contractual indemnification claims against the estates of Gladding and/or Paris.[5] They also argue that any agreement releasing those primarily liable for the cleanup must effect the release of the Objecting Parties, who are alleged to be secondarily liable.

The decision in *In re Stevens, supra.,* suggests that at a minimum the trustee needs the acquiescence of the public authorities to satisfy the requirements of *Midlantic,* under the conditions presented in this proceeding.

*Midlantic* leaves no room for the estate to avoid the administrative expense attendant upon its possession of hazardous waste, except upon the acquiescence of the public authorities whose ultimate legal obligation it is to protect the public health and safety from hazardous waste abandoned by those responsible for its existence.

*In re Stevens,* 68 B.R. at 781.

Pursuant to the terms of the proposed settlement, the trustee is permitted to sell the contaminated property, under conditions which limit the liability of the affected bankruptcy estates and the trustee, and with the acquiesence of NYS. NYS has made it clear that the former officers and directors cannot be released from liability, if NYS is to be a party to the agreement.

To require the trustee to include the former directors and officers in resolving the disposition of this asset could create a bankruptcy case in perpetuity and fetter the estate to a situation without resolve. *See In re Oklahoma Refining Co.,* 63 B.R. 562, 565 (Bankr.W.D.Okla.1986). With the consent of State Street and the consent of NYS, this trustee has done what is reasonable under the circumstances. For this court to preempt the administration of this estate by ordering the inclusion of the former officers and directors "would derogate

---

**5.** The court need not decide at this time whether any such future claims would be treated as administrative expenses or as a general unsecured claim.

the spirit and purpose of the bankruptcy laws requiring prompt and effectual administration within a limited time period." *Id.* at 566 (*citing Katchen v. Landy,* 382 U.S. 323, 328, 86 S.Ct. 467, 471, 15 L.Ed.2d 391 (1966)).

NYS believes that the agreement will promote the public interest, i.e. the public's health and safety is adequately protected. Such approval carries with it a strong presumption of validity. *See United States v. Hooker Chemicals & Plastics Corp.,* 540 F.Supp. 1067, 1080 (W.D.N.Y.1982). At the hearing, the trustee indicated that sale of this asset would remove a major obstacle toward closing this case. Essentially, the trustee believes that the benefits of the settlement agreement greatly outweigh the possible assertion of future claims.

The court concludes that, particularly in a Chapter 11 proceeding, "the bankrupt's estate should not be burdened by estimated claims contingent in nature." *In re Charter Co.,* 862 F.2d 1500, 1502 (11th Cir.1989).

The former officers and directors are not debtors in this court, and the trustee was not obligated to negotiate on their behalf. If the agreement is approved, it will not prevent the Objecting Parties from asserting any claims and defenses now available.

### C. Statutory Duty of the Trustee

Title 28 U.S.C. § 959(b) provides in pertinent part that

> ... a trustee ... shall manage and operate the property in his possession as such trustee ... according to the requirements of the valid laws of the State in which such property is situated, in the same manner that the owner or possessor thereof would be bound to do if in possession thereof.

The Objecting Parties claim that the trustee has not complied with the State of New York's environmental laws because he has not undertaken to clean up the property, citing N.Y.Envtl.Conserv.Law § 27–1313.[6] These parties argue that approval of the settlement agreement would enable the trustee to shift his responsibility for cleanup onto other individuals and entities. The court concludes to the contrary.

At the time of the trustee's appointment, the property was already environmentally damaged, and the trustee lacked the funds for cleanup. The proposed settlement agreement, involving a year and a half of negotiations, provides for the sale of the property and the use of a portion of the sales proceeds for cleanup. It also limits the estate's liability to a reasonable portion of the assets which will be made available to it.

In *Midlantic,* the Supreme Court indicated that a "trustee may not abandon property in contravention of a state statute or regulation that is reasonably designed to protect the public health or safety from identified hazards." *Midlantic Nat. Bank v. New Jersey D.E.P.,* 474 U.S. at 507, 106 S.Ct. at 762. As evidenced by the proposed settlement agreement, the trustee has complied with the goal of the New York statute, which is to develop and implement a remedial program approved by NYS. *See* N.Y.Envtl.Conserv.Law § 27–1313(3)(a) (Consol.Supp.1988) (Commissioner may order development and implementation of remedial program, subject to State approval). By inference the parties to that agreement recognized the practical limitations imposed on the trustee by the lack of funds.

## CONCLUSION

It is not the court's function to substitute its judgment for that of the parties to this proposed agreement, but to assure itself that the settlement adequately protects the public interest and is in accord with relevant environmental and bankruptcy law. *See United States v. Hooker Chemicals & Plastics Corp.,* 540 F.Supp. at 1072, 1073. The court concludes that these standards have been met, and the objections of the former officers and directors must be overruled. The trustee's motion to enter into

---

**6.** Although the Objecting Parties claim that the trustee violated. N.Y.Envtl.Conserv.Law § 27–1313, they did not refer the court to any particular subdivision within § 27–1313 nor to any language within the statute as support for that assertion.

**344**

the sale of the real estate and the settlement of claims will be approved.

An appropriate order will be entered.