

## VII.

Laura Davis Jones, Joel A. Waite, Scott D. Cousins, and Edwin J. Harron, Young, Conaway, Stargatt & Taylor, Wilmington, DE (Daniel H. Golden, Curtis C. Mechling, and Lisa G. Beckerman, Stroock & Stroock & Lavan, L.L.P., New York City, of Counsel) for Debtor and Debtor–in–Possession.

Allen M. Terrell, Jr., Thomas L. Ambro, and Daniel J. DeFranchesci, Richards, Layton & Finger, Wilmington, DE ( Richard F. Casher, Michael Reilly, and Timothy B. De-Sieno, Hebb & Gitlin, Hartford, CT, of Counsel) for Connecticut General Life Insurance Company, Connecticut General Life Insurance Company on Behalf of One or More Separate Accounts and Life Insurance Company of North America.

Alan R. Gordon, Mark Minuti, Jeffrey C. Hampton, and Michael Lastowski, Saul, Ewing, Remick & Saul, Wilmington, DE, and Philadelphia, PA, for Official Unsecured Creditors' Committee of Louise's, Inc.

Kevin Gross, Rosenthal, Monhait, Gross & Goddess, P.A., Wilmington, DE (Michael J. Goldberg, Brian P. Lenihan, and Lindsay Smith Kafka, Hill & Barlow, Boston, MA, of Counsel) for IDP Industrial Development Partners GmbH & Co.KG, Mark O. Winkelman, Roger L. Evans, John J. Cullinane, William A. Sahlman, Lilrus Investments Inc., Rexdor Investments Inc., Essex Special

**In re LOUISE'S, INC., Debtor.**

**No. 97–514 (JJF).**

United States District Court,
D.   Delaware.

July 22, 1997.

Growth Opportunities Fund L.P., Bismuth Investments Limited, DPWC Corporation, FC Partners, Trans National Group and Veronica Heath.

John D. Demmy, and Eric D. Schwartz, Morris, James, Hitchens & Williams, Wilmington, DE, for Bank One, Kentucky, N.A.

Laurie S. Silverstein, Potter, Anderson & Corroon, Wilmington, DE (James D. McGinley, and Brian H. Lamkin, Boston, MA, of Counsel) for Jeffrey Parker and Samuel Bain.

## *OPINION*

FARNAN, Chief Judge.

Pending before me is the Joint Motion of Louise's, Inc. and the CG Life Entities for Entry of an Order Approving Settlement and Compromise. (D.I.286). Louise's, Inc. ("Louise's") the Debtor and Debtor in Possession, and its largest creditor, Connecticut General Life Insurance Company and some related companies (collectively "Connecticut General"), seek an order approving the settlement and compromise of numerous issues and claims between Louise's, its current officers and directors, and Connecticut General. (Joint Motion, at 1).

The Joint Motion is opposed by the Official Unsecured Creditors' Committee of Louise's (D.I.332), a group of Preferred Stockholders (D.I.329), Jeffrey Parker and Samuel Bain[1] (D.I.316), and Bank One Kentucky, N.A. (D.I.331).

## *I. Background*

On March 14, 1997, Louise's filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code"). On April 4, 1997, Connecticut General filed a motion pursuant to 11 U.S.C. § 1121(d) seeking to modify Louise's exclusive right to file a plan of reor-

ganization and to solicit acceptances for its plan. Connecticut General represented in its "Exclusivity Motion" that it intended to propose a plan that "allowed general, unsecured claims (that are not subordinated by contract or by order of the Court), including trade claims [to] be paid in full." (Exclusivity Motion at para. 47(e)).

Connecticut General was motivated to file a plan by virtue of its status as Louise's largest creditor, according to Connecticut General its claim represents approximately 80% of all of Louise's debt. Connecticut General obtained its creditor status by way of a July 1, 1996 transaction through which Louise's received twenty-three million dollars ($23,000,000) in exchange for issuing Senior Notes and Senior Subordinated Notes to Connecticut General. As part of the transaction, Connecticut General also acquired 9,097,308 Warrants to Purchase Non–Voting Common Stock. Because of substantial losses that Louise's incurred through the latter part of 1996, it was unable to make its first interest payment on the Notes in early 1997. At the time of the default, Louise's and Connecticut General attempted to reach an accord. The attempt failed, and Louise's filed its voluntary petition seeking Chapter 11 protection.

The Exclusivity Motion was aggressively litigated between Louise's and Connecticut General, and with its promise of full payment, Connecticut General was able to obtain the concurrence and support of the Creditors' Committee in its effort.

Negotiations to compromise the Exclusivity Motion litigation were commenced prior to the June 10, 1997 hearing on the Motion, and at the June 10, 1997 hearing, Louise's and Connecticut General announced they had reached an agreement in principle with respect to the Motion and that a motion requesting Court approval of the proposed settlement would be filed. On June 24, 1997, Louise's and Connecticut General filed the

---

1. Parker and Bain own respectively, 25 and 10 shares of 400 Class B limited partnership shares of TGTBT Ltd., which owns 68.6% of Louise's issued and outstanding common stock (D.I. 310 at 1).

Joint Motion seeking approval of their agreement. A hearing was held on the Joint Motion on July 14, 1997.

## II. Discussion

### A. The Agreement

The Order proposed by Louise's and Connecticut General sets forth the terms of the compromise of the Exclusivity Motion. Paragraph 3 of the Proposed Order states that the settlement and compromise is:

> embodied in that certain letter agreement dated June 9, 1997 (the "Original Settlement Letter") among the CG Life Entities, the Debtor, Peter A. Spreckler ("Spreckler") and Kelly G. Duncan ("Duncan"), a copy of which is annexed to the Settlement Motion as Exhibit B, which Original Settlement Letter was amended pursuant (sic) that certain Amendment No. 1 to Settlement Agreement in Principle dated June 23, 1997 (the "Settlement Letter Amendment")....

(D.I. 286, Ex. A at 2–3).

I have reviewed the two letters that comprise the settlement agreement and note, as do movants, that the settlement and compromise concern multiple issues raised in this bankruptcy case. (D.I. 286, Ex. A at 1).

### B. Summary of Objections

After reviewing all of the substantive objections raised to the Settlement Agreement, I find that the following raise serious concerns and require discussion.

1. **The Settlement Agreement is Not a Rule 9019 Compromise of the Pending Exclusivity Motion (D.I.329, D.I.286, D.I.331, D.I.330)**

The Objectors contend that the proposed Settlement Agreement encompasses issues that are completely unrelated to the pending Exclusivity Motion and is not a compromise to settle the issue of the pending dispute pursuant to Rule 9019. The Objectors note that the Settlement Agreement requires approval of numerous issues that have nothing

to do with permission to file a plan of reorganization during the Debtor's exclusive period. The Objectors cite the following list of unrelated issues: 1) the resignation of Louise's principals; 2) installation of a Connecticut General proposed management team to operate Louise's; 3) reorganization of Louise's board of directors; and 4) release of claims against interested, as well as, third parties.

2. **The Settlement Agreement is an Impermissible Plan to Circumvent the Plan Approval Process (D.I.329, D.I. 286)**

The Objectors contend that the Settlement Agreement is an effort by Connecticut General to ignore the requirements of the statutory plan confirmation process and to impermissibly effectuate an extraordinarily broad Rule 9019 compromise. In support of their argument, the Objectors rely on *In re Braniff Airways, Inc.*, 700 F.2d 935, 940 (5th Cir.1983). The objectors contend that *Braniff* requires that a debtor's estate and its assets cannot be restructured or reallocated without providing all creditors the protections intended by Chapter 11, such as a disclosure statement, notice, voting, and a hearing on plan confirmation. The Objectors contend that, like *Braniff*, the Settlement Agreement proposed here would permit transfer of the operation and control of Louise's to Connecticut General, permit new management and a new board of directors to assume control, and allow for Connecticut General to have the exclusive right to file a reorganization plan, all without the scrutiny required by the Bankruptcy Code.

3. **The Debtor has Abandoned its Fiduciary Obligations to the Estate (D.I.331)**

The Objectors contend that the release of claims by Louise's, which it holds for the benefit of the estate, will violate fiduciary obligations that Louise's owes to creditors and interested parties other than Connecticut General. The Objectors argue that the egregiousness of the abandonment of fiduciary obligations by Louise's is best characterized by the treatment afforded to insiders

such as Messrs. Spreckler and Duncan. *See also* D.I. 333 at 22.

## C. Legal Standards

The parties agree that the Joint Motion of Louise's and Connecticut General is properly considered under Rule 9019 of the Federal Rules of Bankruptcy Procedure. Specifically, Rule 9019(a) provides:

> (a) **Compromise.** On motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement. Notice shall be given to creditors, the United States trustee, the debtor, and indenture trustees as provided in Rule 2002 and to any other entity as the court may direct.

> Fed. R. Bankr.P. 9019(a).

■ In the case of *Protective Committee for Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 88 S.Ct. 1157, 20 L.Ed.2d 1 (1968), the United States Supreme Court instructed that in considering whether to approve a compromise, a court must:

> appraise [itself] of all facts necessary for an intelligent and objective opinion of the probabilities of ultimate success should the claim be litigated. Further, the judge should form an educated estimate of the complexity, expense, and likely duration of such litigation, the possible difficulties of collecting on any judgment which might be obtained, and all other factors relevant to a full and fair assessment of the wisdom of the proposed compromise.

390 U.S. at 424, 88 S.Ct. at 1163. In sum, the decision whether to approve a compromise under Rule 9019 is committed to the sound discretion of the Court, which must determine if the compromise is fair, reasonable, and in the interest of the estate.

## D. Discussion

After considering the evidence adduced at the July 14, 1997 hearing and the papers filed by the movants and interested parties, I conclude that the Joint Motion for an Order Approving Settlement and Compromise and the Settlement Agreement incorporated therein, must be denied.[2]

■ The Objectors to the Settlement Agreement argue that the Settlement Agreement exceeds the boundaries of a Rule 9019 compromise and is really a proposed plan of reorganization disguised as a Rule 9019 compromise. I agree.

The issue raised by the Exclusivity Motion was straightforward—should Louise's exclusive right to file a plan of reorganization be abrogated and Louise's largest creditor, Connecticut General, be granted leave to file its own plan of reorganization during the debtor's exclusive period. The proposed Settlement Agreement, while obtaining Louise's consent for Connecticut General to file a plan of reorganization, also attempts to structure a transaction whereby Connecticut general improperly acquires Louise's.

I have reached this conclusion based on my reading of several of the terms of the settlement as outlined in the June 9, 1997 and June 23, 1997 Settlement Letters (D.I. 286, Ex. B & C). The compromise reached by Louise's and Connecticut General provides for a two phase implementation of the Settlement Agreement, a "Settlement Phase" and a "Plan and Disclosure Statement Phase." While portions of the Plan and Disclosure Statement Phase are troublesome, it is the Settlement Phase provisions, in my view, that bar consideration and approval of the Settlement Agreement under Rule 9019. The specific provisions I am referring to are:

1.7 *Other Directors*

(a) Upon approval of the settlement by the Court, Messrs. Lussky and Rogers shall exchange mutual general releases with the Debtor and CIGNA. If all the current directors resign, prior to their resignations, they will appoint one or more re-

---

2. In view of the nature of the Debtor In Possession Financing Motion (D.I.284) as a condition precedent, it will also be denied.

placement directors *designated by CIGNA.* (Emphasis Added)

1.11 *Management.* Upon the approval of the settlement by the Court, the Debtor's board *immediately will retain the management services of a CIGNA designee* (the "CIGNA Designee") pursuant to a management agreement (the "Management Agreement") to be negotiated by the parties and approved by the Court as part of the settlement. *Such CIGNA designee will have broad authority to make operational decisions for the Debtor including, without limitation, the ability to make decisions regarding borrowing under the DIP financing and for formulation and confirmation of the Plan.* (Emphasis Added).

1.13 *Corporate Issues.* Upon approval of the settlement by the Court, the Debtor shall not, without approval of the Court, (i) terminate, discharge, or release from its employ the CIGNA designee or (ii) undertake, support, or acquiesce in any attempt by any party to change or alter the composition or membership of the Debtor's board of directors from that contemplated in paragraph 1.6(a) hereof.

Although there are other provisions of the Settlement Agreement that I find fall outside the parameters of reasonableness when measured against the lone issue of the Exclusivity Motion, it is the *de facto* transfer of control of the Debtor to a creditor outside the plan confirmation process that convinces me that the Settlement Agreement cannot be considered or approved under Rule 9019. Even a broad interpretation of the Exclusivity Motion issue does not permit the conclusion that compromise of the Motion could reasonably encompass the transfer of control of the Debtor and its estate without complying with the statutory requirements for confirmation of a plan.

The Settlement Agreement, presented here as a compromise of the Exclusivity Mo-

tion issue, is so tainted with provisions unrelated to the exclusivity issue that it cannot be fairly denoted a Rule 9019 compromise. In reality, the Settlement Agreement is a vehicle for Connecticut General to implement a plan of reorganization guaranteed to be more favorable to Connecticut General than all other interested parties. The "control" provisions of the Settlement Agreement attempt to secure, for the benefit of Connecticut General only, all aspects of control (governance, management, and financial) of Louise's, so as to insure that Connecticut General can control the plan approval process.

In sum, because I find that the terms of the Settlement Agreement compromise issues not the subject of the Exclusivity Motion, I conclude that the Settlement Agreement is not a Rule 9019 compromise, and therefore, cannot be approved. Further, I find that the Settlement Agreement as a two-step or phased process would ultimately lead to a proposed plan of reorganization, the terms of which could reasonably be found to have been pre-determined by virtue of the "control" provisions of the Settlement Agreement, thereby circumventing a meaningful consideration of the requirements of Chapter 11 regarding confirmation of a reorganization plan.[3]

### III. Conclusion

For the reasons discussed, the Joint Motion of Louise's, Inc. and the CG Life Entities for Entry of an Order Approving Settlement and Compromise (D.I.286) will be denied by an Order to be entered.

---

**3.** The argument of Abandonment of Fiduciary Obligations by Debtor will not be addressed because my conclusion that the Settlement Agreement is not a Rule 9019 compromise renders further discussion of this argument unnecessary.