**In re NATIONWIDE SPORTS
DISTRIBUTORS, INC.,
Debtor.**

**Bankruptcy No. 98–13552F.**

United States Bankruptcy Court,
E.D. Pennsylvania.

Oct. 8, 1998.

James D. Matour, Abbe A. Miller, Middleman & Matour, Philadelphia, PA, for Debtor.

Jeffrey L. Eichen, Eichen & Associates, P.C., Doylestown, PA, for Sellier & Bellot.

Robert P. Simons, Kurt F. Gwynne, Klett Kieber Rooney & Schorling, P.C., Philadelphia, PA, for Browning Co., U.S. Repeating Arms, Inc., Glock Inc., and Colt's Mfg. Co., Inc.

Ethan D. Fogel, Christopher D. Loizides, Dechert Price & Rhodes, Philadelphia, PA for Blount, Inc., Federal Cartridge Co., Federal Cartridge Co., Simons Outdoor Corp., O.F. Mossberg & Sons, Inc. (on its behalf and on behalf of Maverick Arms, Inc. and Uzi America, Inc.), International Armament Corp. (t/a Interarms), Century International Arms, Corp., and Leupold & Stevens Inc.

Kevin P. Callahan, Assistant U.S. Trustee, Office of U.S. Trustee, Philadelphia, PA for Office of U.S. Trustee.

John J. Koresko, King of Prussia, PA, for Leslie Edelman, Inc.

## MEMORANDUM

BRUCE FOX, Bankruptcy Judge.

The chapter 11 debtor in possession, Nationwide Sports Distributors, Inc., has filed a motion seeking court approval for a settlement reached with seven creditors: Blount, Inc.; Federal Cartridge Co.; Simmons Outdoor Corp.; O.F. Mossberg & Sons, Inc. (on its behalf and on behalf of Maverick Arms, Inc. and Uzi America, Inc.); International Armament Corp. (t/a Interarms); Century International Arms, Corp.; and Leupold & Stevens, Inc. This proposed settlement agreement is opposed by the United States trustee and various creditors: Sellier & Bellot; Browning Co.; U.S. Repeating Arms, Inc.; Glock, Inc.; and Colt's Manufacturing Co., Inc.

A hearing was held on the instant motion, with all interested parties afforded the opportunity to present evidence in support of their respective positions. In addition, oral argument was offered at the conclusion of the evidence. (The parties declined the opportunity to submit posthearing memoranda.) The following relevant facts were demonstrated.

## I.

On March 19, 1998, this bankruptcy case commenced with an involuntary chapter 7 bankruptcy petition filed against the debtor by the seven above-mentioned creditors who have now entered into the proposed settlement with the debtor. (The creditors and the debtor refer to these seven creditors as the "petitioning creditors.") Initially, the debtor opposed their involuntary petition. However, on the date scheduled for trial, the debtor reported an accord with these petitioning creditors by which an order for relief would be entered and the case converted to chapter 11. This conversion placed the debtor in the position of a chapter 11 debtor in possession under section 1101 with the ability to run its business—the sale of firearms— and to propose a reorganization plan. On June 12, 1998, the United States trustee, in accordance with 11 U.S.C. § 1102(a), appointed nine creditors to be members of the official committee of unsecured creditors. The seven petitioning creditors accepted appointment, as did two others: Browning Co. and U.S. Repeating Arms, Inc.

From the evidence presented, it appears that Mr. Leslie Edelman was the former president and chief officer of the debtor. Presently, Mr. Denis Schusterman is the debtor's sole officer. Mr. Edelman's father, Harris Edelman, is the debtor's sole shareholder. Further, Mr. Schusterman is not paid by the debtor for his services as sole officer of the debtor; compensation for such service is paid by a company controlled by Mr. Leslie Edelman.

The debtor is not operating and has been liquidating its assets since this bankruptcy case was commenced. Prior to the involuntary petition, the debtor appears to have transferred its then remaining inventory to an entity known as Ful Line Sports Distributors, Inc. Ful Line operates out of the debtor's former location and with some of the debtor's former employees.

On or about June 25, 1998, the petitioning creditors filed a motion to appoint a chapter 11 trustee in this case or, alternatively, to have the chapter 11 case converted and a chapter 7 trustee appointed (hereinafter "the trustee litigation"). Among other allegations, this motion asserted that Mr. Edelman and Mr. Schusterman "appear to have directed substantial transfers of assets to affiliates and insiders with the intent of defrauding

Nationwide's creditors." Ex. C–2 (motion to appoint trustee), at 2. This trustee litigation was opposed by the debtor.

 The petitioning creditors and the debtor then began to undertake discovery in support of their positions in the trustee litigation. A hearing on the trustee litigation was scheduled to take place on July 24, 1998, but the parties reported that they had reached a settlement. The instant motion for court approval of this agreement was filed on July 30, 1998.[1]

The terms of the proposed settlement may be found in two documents. First, there is the proposed "settlement agreement." Ex. D–5. Under its terms, the petitioning creditors agree to withdraw their motion seeking the appointment of a bankruptcy trustee. These creditors also agree to waive any administrative claims they may have against the estate arising from their efforts in filing the involuntary petition and in filing the trustee motion. The debtor, in turn, agrees to release all claims it may have against the petitioning creditors and two individuals: Gregory Warne and Harrison Walter Snyder. In addition, the debtor agrees to file, by a date certain, "a motion for approval of a written agreement setting forth the current arrangement between the Debtor and Ful Line and will, in the event of any proposed transfer of assets of the debtor, file a motion with the Court seeking approval of such transfer." Ex. D–5.

There is another aspect of the settlement which must be mentioned.

This settlement agreement is expressly made "contingent upon the sale of [the petitioning creditors'] unsecured claims ... to Leslie Edelman ... at a discount, pursuant to the terms of a Claims Assignment Agreement dated July 24, 1998 and contingent upon the Court's approval of this Agreement." Ex. D–5.[2] The "claims assignment agreement," Ex. D–2, calls for the petitioning creditors to sell all their unsecured claims against Nationwide, which aggregate to roughly $950,000.00, to Mr. Edelman (or one of his companies) for $675,000.00. At the closing, the sellers and the buyer will exchange mutual releases. In addition, Mr. Edelman agrees to subordinate these assigned claims to the unsecured claims of all of creditors.

The debtor offered the testimony of Mr. Schusterman to demonstrate the fairness to the estate of the proposed settlement.

Mr. Schusterman stated that discovery and trial preparation for the hearing on the trustee motion would have involved "significant" costs to the debtor. He was, however, quite confident that the debtor would prevail if there were no settlement and a hearing on the trustee motion were held. Mr. Schusterman stated that he was unaware of any claims the debtor had against the petitioning creditors—except (in his view) the potential claim for the recovery of fees and costs against them were their trustee motion unsuccessful—and so did not believe that a

1. All creditors received a copy of a document styled "Notice of Motion to Approve Settlement Agreement." Exs. D–3, D–4. The notice, a one page document, did not inform the creditors of all of the terms of the proposed settlement; however, it did inform them of two of the most salient terms—the proposed withdrawal of the motion to appoint a trustee, and the purchase of the claims of the petitioning creditors by an "insider" of the debtor—and also informed them that the copy of the entire motion could be obtained from the court clerk (at an address disclosed in the motion).

The United States trustee complains that this notice of the settlement motion was inadequate. I disagree.

The debtor has more than one hundred creditors and interested parties. Adequate notice does not require that all of the terms of settlement be included. See In re Drexel Burnham Lambert Group, Inc., 995 F.2d 1138, 1145 (2d Cir.1993) ("This lack of particularity does not constitute a constitutional deficiency. Notice

may satisfy due process without setting forth verbatim the full text of a proposed settlement; it may describe the settlement in general terms"); In re Lee Way Holding Co., 120 B.R. 881, 889 (Bankr.S.D.Ohio 1990). The fact that the petitioning creditors were seeking to withdraw the trustee litigation and to assign their claims to an insider of the debtor was clearly stated. This information was sufficient to cause the United States trustee and a number of creditors to review the entire agreement and raise objections thereto.

2. The reference in the settlement agreement to the contingency of court approval of "this Agreement" is ambiguous. While it could well refer to the "Claims Assignment Agreement," debtor's counsel expressly stated at the hearing that he did not seek approval for the claims assignment; and counsel for the petitioning creditors did not advocate otherwise.

As will be discussed in the text below, the claims assignment agreement is a component of the settlement accord and its terms cannot be

release would deprive the estate of any significant asset. Similarly, the release of claims against the two individuals was considered by him as immaterial as the debtor either had no claims against them or the recovery of damages on any viable claim was problematic.

Finally, the debtor has proposed a chapter 11 plan which has been filed with this court. Under its terms, the debtor will liquidate all of its assets and distribute them to creditors. There are approximately $1.9 million in unsecured claims, of which 50% are held by the seven petitioning creditors.

In addition to the liquidation of the debtor's assets, the debtor's proposed plan calls for Mr. Leslie Edelman to contribute certain funds to the debtor for distribution under this plan. If the instant settlement were approved, then Mr. Schusterman believed that Mr. Edelman would contribute $100,000.00 to the debtor's plan. Were this settlement not approved, then he would provide $200,000.00—and possibly as much as $500,000.00 if certain creditors of the debtor were to provide him with releases of any claims they held against him.

Mr. Schusterman estimated that unsecured creditors of the debtor might receive distributions up to 40% of their claims, depending upon the resulting proceeds from the debtor's ongoing asset liquidation. In contrast, the petitioning creditors would receive 71% distribution from Mr. Edelman if they transferred their claims to him under the terms of the claims assignment agreement.

## II.

### A.

■ The present motion is brought by the chapter 11 debtor in possession under Fed.R.Bankr.P. 9019(a). When a bankruptcy trustee seeks to compromise a dispute, she must seek court approval on notice and hearing. *See generally, e.g., In re Martin,* 91 F.3d 389 (3d Cir.1996). Since a chapter 11 debtor in possession has the almost all the same powers and duties as a bankruptcy trustee, 11 U.S.C. § 1107(a), Nationwide now seeks court approval of its settlement agreement with the petitioning creditors under the terms just outlined. *See, e.g., In re Continental Airlines Corp.,* 907 F.2d 1500, 1508 n.

7 (5th Cir.1990); *In re Kaiser Steel Corp.,* 105 B.R. 971 (D.Colo.1989).

The requirement that the bankruptcy trustee (or debtor in possession) obtain court approval for a compromise of litigation stems from Fed.R.Bankr.P. 9019(a), which states:

(a) Compromise. On motion by the trustee and after a hearing on notice to creditors, the United States trustee, the debtor and indenture trustees as provided in Rule 2002 and to such other entities as the court may designate, the court may approve a compromise or settlement.

■ When a bankruptcy trustee seeks authority to compromise a single claim or dispute, the criteria by which this request is reviewed is well established:

This particular process of bankruptcy court approval [of the trustee's motion to settle] requires a bankruptcy judge to assess and balance the value of the claim that is being compromised against the value to the estate of the acceptance of the compromise proposal. Taking our cue from *Protective Committee Stockholders of TMT Trailer Ferry, Inc. v. Anderson,* 390 U.S. 414, 424–25, 88 S.Ct. 1157, 20 L.Ed.2d 1 (1968), we recognize four criteria that a bankruptcy court should consider in striking this balance: (1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors. *See In re Neshaminy Office Bldg. Assocs.,* 62 B.R. 798, 803 (E.D.Pa. 1986).

*In re Martin,* 91 F.3d at 393.

The district court decision cited by the Third Circuit Court of Appeals had framed the purpose of court review of a trustee's settlement proposal in the following manner:

Rule 9019(a) of the Rules of Bankruptcy Procedure provides that "[o]n motion by the trustee and after hearing on notice to the creditors, ... the court may approve a compromise of settlement." Approval of the settlement lies within the sound discretion of the Bankruptcy Court.... In deciding whether to approve a settlement, the court must determine whether the pro-

ignored in considering whether this proposed settlement should receive court approval over the

objections of interested parties.

. . . . .

In exercising its discretion regarding whether to approve a trustee's application to settle a controversy, relevant criteria which the Bankruptcy Court may consider include: (1) the probability of success in the litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interests of the creditors.... In determining whether to approve the trustee's application to settle a controversy, the Bankruptcy Court does not substitute its judgment for that of the trustee. [*In re Carla Leather, Inc.*, 44 B.R. 457, 465 (Bankr.S.D.N.Y.1984), *aff'd*, 50 B.R. 764 (S.D.N.Y.1985).] "Nor is the court 'to decide the numerous questions of law and fact raised by [objections] but rather to canvass the issues to see whether the settlement fall[s] below the lowest point in the range of reasonableness.'" *Id.*, *quoting* [*In re W.T. Grant Co.*, 699 F.2d 599, 608 (2d Cir.), *cert. denied sub nom. Cosoff v. Rodman*, 464 U.S. 822, 104 S.Ct. 89, 78 L.Ed.2d 97 (1983) ]. In addition, "[b]ecause the bankruptcy judge is uniquely situated to consider the equities and reasonableness of a particular compromise, approval or denial of a compromise will not be disturbed on appeal absent a clear abuse of discretion." [*In re Patel*, 43 B.R. 500, 505 (N.D.Ill.1984) ] (citations omitted). *In re Neshaminy Office Bldg. Associates*, 62 B.R. 798, 803 (E.D.Pa.1986) (citations omitted).

■ Thus, in deciding whether to approve a particular compromise, courts utilize various criteria designed to achieve the objective of having the trustee or debtor in possession act in best interests of the estate. *Accord, e.g., Matter of Energy Co-op. Inc.*, 886 F.2d 921, 927 (7th Cir.1989) ("The benchmark for determining the propriety of a bankruptcy settlement is whether the settlement is in the best interests of the estate"). Moreover, "[t]he Trustee [or debtor in possession], as proponent of the proposed settlement, has the burden of persuasion that the settlement is in the best interest of the estate." *In re Bell & Beckwith*, 93 B.R. 569, 574 (Bankr. N.D.Ohio.1988); *see Matter of AWECO, Inc.*, 725 F.2d 293 (5th Cir.), *cert. denied*, 469 U.S. 880, 105 S.Ct. 244, 83 L.Ed.2d 182 (1984); *In re Neshaminy Office Bldg. Associates*.posed

settlement is in the best interest of the estate.

■ In deciding whether to approve a compromise, the judgment of the bankruptcy fiduciary should be given some deference. *See In re Del Grosso*, 106 B.R. 165, 168 (Bankr.N.D.Ill.1989). Nevertheless, a court cannot simply approve a settlement because the trustee or debtor in possession so moves. *In re American Reserve Corp.*, 841 F.2d 159 (7th Cir.1987). The trustee must demonstrate that the proposed settlement is in the best interest of the estate. *Accord, e.g., In re Hydronic Enterprise, Inc.*, 58 B.R. 363, 366 (Bankr.D.R.I.1986) ("even if it is concluded that the settlement is above the lowest level of reasonableness, in our discretion we may still deny approval, if not in the best interest of the estate").

### B.

The standard for the application of Rule 9019(a), just discussed, presupposes the compromise by a bankruptcy fiduciary of claims belonging to or raised against specific individuals or entities. *See, e.g., In re Martin*, 91 F.3d at 391. The dispute which the debtor proposes to settle in this instance does not involve a claim or interest belonging to the seven petitioning creditors. Nor is it clear that the participation of the debtor in the trustee litigation is as a fiduciary on behalf of all creditors and other interested parties in this bankruptcy case. Further, the settlement agreement, as a whole, involves agreements of claims assignment, releases and subordination which extend to issues and parties beyond those involved in the trustee litigation. *See In re Louise's, Inc.*, 211 B.R. 798 (D.Del.1997) (compromise was not approved, pursuant to R. 9019(a), where it encompassed issues unrelated to pending exclusivity motion for which compromise was sought). For these reasons, the provisions of Rule 9019(a) may not be germane.

■ By virtue of 11 U.S.C. §§ 1104(a) and 1112(b), the United States trustee or any "party in interest" make seek the appointment of a chapter 11 trustee or the conversion of a chapter 11 case to one under

chapter 7. The phrase "party in interest" is defined in a chapter 11 case to include any creditor or any official creditors' committee. Thus, the settlement of litigation for which the debtor seeks court approval involves a request for relief by creditors which, if not prosecuted by the petitioning creditors, may be renewed by any other creditors (including the objecting creditors) as well as by the United States trustee or the official unsecured creditors' committee.

The litigation cost/benefit analysis which is germane to Rule 9019(a) is not easily determined when, as here, there can only be speculation whether the "settled" litigation will be ended or merely resumed by other interested parties. In addition, the traditional compromise approval analysis by a court under Rule 9019(a) is made even more difficult in this instance due to the nature of the relief raised by the specific litigation which the debtor in possession now seeks court approval to settle.

Normally, in deciding whether to approve the trustee's proposed compromise of a claim, a bankruptcy court will examine the likelihood that the trustee will prevail (either in her claim or in her defense), the likely costs to be incurred by the trustee, and compare the likely risks and costs to the estate with the consideration to be either received or provided by the estate in settlement. If the trustee is the plaintiff, a court is roughly valuing the trustee's claim (including litigation costs) and balancing that against the amount the trustee will receive via settlement. If the settlement does not provide roughly equal to or greater value than the estimated worth of the claim (including the trustee's ability to collect from the defendant), the estate is compromising an asset for which it is not receiving fair compensation and approval should be denied. Conversely, if the trustee proposes to compromise a claim made against the estate, a court again values this claim and insures that the settlement does not involve clear overpayment by the estate to the specific creditor.

█ In either instance, the role of the court in deciding whether to exercise its discretion and approve or disapprove a proposed compromise (with some deference to the judgment of the trustee) is to insure that the bankruptcy estate—*i.e.*, the interest of creditors—is not adversely affected by the proposed settlement with a particular creditor or third party. The decision to approve or disapprove a settlement pursuant to Bankr.R. 9019(a) looks only to whether the proposed settlement is in the best interests of the bankruptcy estate. *See, e.g. In re Bell & Beckwith,* 87 B.R. 476, 478 (N.D.Ohio 1988); *In re Neshaminy Office Bldg. Associates,* 62 B.R. at 803; *In re Paris Industries Corp.,* 106 B.R. 339 (Bankr.D.Me.1989) (settlement approved as in best interest of debtor's estate over objections of debtor's former director and officers, who were not released from liability by the agreement and who faced potential indemnification claims). A bankruptcy court would not disapprove of a compromise because the party settling with the trustee is paying too much or is receiving too little.

█ Moreover, when a bankruptcy trustee or debtor in possession seeks court approval of a compromise under Rule 9019(a), it does so as the fiduciary acting on behalf of the bankruptcy estate. Its interests in the litigation sought to be compromised are those of the bankruptcy estate; the interests asserted by the particular creditor or third party in the litigation are viewed in opposition with those of the estate.

In the trustee litigation which the debtor now seeks to compromise, the interests of the debtor in possession may not be aligned with those of the bankruptcy estate.

The petitioning creditors are not raising any claim or defense belonging solely to them against the estate which is being compromised. Rather, they are asserting alternatively that "cause" exists for the appointment of a chapter 11 trustee—due to the "fraud, dishonesty or gross mismanagement of the affairs of the debtor by current management," 11 U.S.C. § 1104(a)(1)—or that the best interest of creditors and the estate would be served by the appointment of a bankruptcy trustee either under section 1104(a)(2) or 1112(b). If these allegations are proven, then a bankruptcy trustee will be appointed because current management has not fulfilled the fiduciary duties which the chapter 11 debtor owes to all creditors. *See*

*generally In re Marvel Entertainment Group, Inc.,* 140 F.3d 463 (3d Cir.1998). Thus, in seeking the appointment of a bankruptcy trustee, the petitioning creditors are asserting that the interests of the estate will benefit by such relief. If their allegations of fraud involving the debtor's management are valid, then it would be in the interest of all creditors and so of the bankruptcy estate to replace the debtor's present management with a trustee. *See id.*

Given the alignment of interests in litigation seeking the appointment of a bankruptcy trustee on the grounds of fraudulent conduct by debtor's management, it is not intuitive to me that a chapter 11 debtor—acting in its capacity as fiduciary for the interests of the estate—can seek court approval under Rule 9019(a) to compromise this litigation. Its participation in the litigation opposing the relief sought may be on behalf of debtor's current management and not in its fiduciary capacity. Indeed, neither I nor the debtor have found any reported decisions involving application of Rule 9019(a) to such a contested matter.[3]

However, if I accept the debtor's position that withdrawal of the trustee litigation must be sought through court approval under Rule 9019(a) because in connection with the withdrawal of the motion the debtor will be granting releases of claims, then the "paramount interests of creditors" standard requires that such approval be granted only when it is demonstrated that the litigation against the debtor would have little or no chance of success.[4] Furthermore, the terms of any such compromise cannot run afoul of 18 U.S.C. § 152(6), which makes illegal the "knowing and fraudulent" payment or receipt of consideration in return for the forbearance of any action in a bankruptcy case. *See generally In re Taylor,* 190 B.R. 413, 416 n. 3 (Bankr.D.Colo.1995).

---

**3.** The debtor refers to *In re Mavrode,* 205 B.R. 716 (Bankr.D.N.J.1997) to support its position that Rule 9019(a) applies to contested matters such as this.

*Mavrode* concerned a proposed settlement of a complaint brought by a creditor against a chapter 7 debtor objecting to the entry of a chapter 7 discharge order. There is a similarity between that relief and a request to appoint a bankruptcy trustee, in that both involve relief intended to address harm to all creditors rather than only one. Further, the court in *Mavrode* did apply a Rule 9019(a) analysis. But in so doing, that court dismissed the language of Rule 9019(a) that limits its application to compromises by a bankruptcy fiduciary—*i.e.,* a trustee. A chapter 7 debtor is not a bankruptcy fiduciary. Therefore, I do not find the *Mavrode* decision to be persuasive authority regarding the applicability of Rule 9019(a) to trustee litigation.

Furthermore, the *Mavrode* court had no need to rely upon Rule 9019(a) as a basis to review the compromise agreement then before it. Clearly, Fed.R.Bankr.P. 7041 provides for court review of any compromise involving the dismissal of a complaint objecting to a debtor's discharge (but not to motions in chapter 11 cases seeking the appointment of a trustee). Under Rule 7041, a creditor who has objected to entry of a bankruptcy discharge cannot voluntarily dismiss its complaint absent court approval and upon terms fixed by the court. Thus, it was appropriate for the parties to seek the approval of the *Mavrode* court for their settlement of that litigation, as the settlement involved the withdrawal of the creditor's complaint.

The purpose of the limitation on dismissals of discharge objections found in Rule 7041 stems from a concern that creditors will file valid complaints objecting to discharge and then withdraw such complaints upon receipt of payments from the debtor. The Advisory Committee Note to the Rule 7041 makes it clear that such payments may be collusive and the dismissal harmful to the interests of other creditors. *See* L. King, 10 *Collier on Bankruptcy,* ¶ 7041.01 (15th ed. rev. 1998):

> Notice of the proposed dismissal as well as hearing thereon is required to help avoid any possible collusion between the debtor and a creditor who files a complaint objecting to the discharge of the debtor. It is improper for a debtor to offer or for a creditor to receive any consideration for the doing or forbearance of any act. The fraudulent payment or receipt of consideration for withdrawal of a complaint objecting to discharge ... is a criminal offence.

(footnote omitted).

In contrast, a motion to appoint a bankruptcy trustee is a contested matter governed by Fed. R.Bankr.P. 9014. Rule 9014 incorporates the procedural Rule 7041. And Rule 7041 incorporates the dismissal provisions of Fed.R.Civ.P. 41 (except for complaints objecting to discharge). Thus, no court approval is needed for the voluntary dismissal of any contested matter where all parties to the litigation agree with dismissal.

**4.** Usually, the stronger the claims against the chapter 11 debtor or trustee, the easier it will be for the bankruptcy trustee to justify a compromise under Rule 9019(a). Here, the converse would be true.

Upon my review of the evidence presented, there was no such showing of little or no likelihood of success in the trustee litigation brought against the debtor. The only evidence on this point came from the conclusory testimony of Mr. Schusterman that the debtor was confident of prevailing. He also acknowledged, though, that the debtor entered into an agreement with another entity to use its assets without any fixing of compensation. Further, it was conceded that Mr. Edelman indirectly pays the compensation of the debtor's sole officer. Under these circumstances, creditors may well be concerned that the debtor's current management is being controlled by Mr. Edelman for his own benefit and not for the benefit of the debtor's creditors.

I do not now conclude that the debtor's current management has acted improperly or has breached its fiduciary duties. I simply have insufficient evidence to accept Mr. Schusterman's conclusions on this point as justified.

 Moreover, in supporting the debtor's motion to approve this settlement, the petitioning creditors do not argue that their motion to appoint a trustee is likely to fail. Clearly, the objecting creditors believe that the allegations of conflict of interest or misconduct by management will be proven and a trustee appointed. As the debtor has the evidentiary burden of persuasion under Rule 9019, *see, e.g., In re C.P. del Caribe, Inc.*, 140 B.R. 320, 326 (Bankr.D.P.R.1992), it has not met that burden in this instance. Therefore, even if I accept *arguendo* the applicability of Rule 9019(a) to a motion to appoint a bankruptcy trustee, there was insufficient evidence presented to demonstrate that the proposed compromise was in the paramount interest of creditors or the best interest of the bankruptcy estate. *See also In re Louise's, Inc.* (motion under R. 9019(a) was denied as not being in the interests of creditors, when the terms of the proposed settlement addressed issues which extended beyond the narrow confines of the contested matter to be settled).

### III.

There is another reason beyond that just discussed which causes me to reject the debtor's motion to approve its compromise with the petitioning creditors.

The United States trustee and the objecting creditors contend that the fiduciary duties of the petitioning creditors would be violated under the terms of the proposed settlement. For example, the objecting creditor Sellier & Bellot argues "that Nationwide has attempted to buy the silence of the Petitioning Creditors by having insiders or affiliates pay off or purchase [their] claims." Objection, # 3 (at 2).

 As the objectors maintain, the petitioning creditors are members of the official committee of unsecured creditors. Official unsecured creditor committees are provided for by 11 U.S.C. § 1102(a)(1). In general, the purpose of such committees is to represent the interests of unsecured creditors and to strive to maximize the bankruptcy dividend paid to that class of creditors. *See, e.g., In re Haskell–Dawes, Inc.*, 188 B.R. 515, 519 (Bankr.E.D.Pa.1995). Membership on this committee is achieved by invitation only, extended by the United States trustee, 11 U.S.C. § 1102(a)(1), and is purely voluntary. The selected creditors must be "willing to serve." 11 U.S.C. § 1102(b)(1).

 As has long been noted, both official creditors' committees and their members owe a fiduciary duty to their constituencies:

> In addition, the creditors appointed to the creditors' committee have a fiduciary obligation to act in the interests of the members whom they represent.... This duty prohibits members of the creditors' committee from using their position to advance their own individual interests. *See In re Map International, Inc.*, 105 B.R. 5, 6 (Bankr.E.D.Pa.1989) (members of creditors' committee "may not use their positions as committee members to advance only their individual interests"); *In re Enduro Stainless, Inc.*, 59 B.R. 603 (Bankr. N.D.Ohio 1986) (member of creditors' committee "may not act through the committee

**464**

in such a manner as to promote only that creditor's interests").

*In re Haskell-Dawes, Inc.,* 188 B.R. at 522 (citations omitted); *see generally Woods v. City Nat. Bank & Trust Co. of Chicago,* 312 U.S. 262, 268–69, 61 S.Ct. 493, 85 L.Ed. 820 (1941); *In re Mountain States Power Co.,* 118 F.2d 405, 407 (3d Cir.1941).

As was expressed shortly after the effective date of the current Bankruptcy Reform Act of 1978:

> A holder of a claim ... who serves on a committee undertakes to act in a fiduciary capacity on behalf of the members of the class he represents. After a creditor ... undertakes to serve in this fiduciary capacity, he is duty bound to represent the interests of all members of his class and his rights and duties are of a different nature.

> Therefore, a committee member must be mindful of this fiduciary responsibility and must avoid acting upon any matter which may result in a benefit to him in particular as opposed to the members of the class which he represents....

> The most obvious fiduciary duty which a committee member undertakes is to avoid using said position to further self interest. In the event a committee member permits self interest to override his fiduciary duty to the member of the class he represents, the court can fashion such remedy as is appropriate, including the restoration of any profits or removal from the committee....

DeNatale, *The Creditors' Committee Under the Bankruptcy Code—A Primer,* 55 Am. Bankr.L.J. 43, 56–57 (1981).

Once a creditor becomes a committee member, its fiduciary obligations may constrain its behavior from that which might otherwise be permissible. The Third Circuit Court of Appeals has referred favorably to the following description of this constraint by Chief Judge Cardozo:

> Many forms of conduct permissible in a workaday world for those acting at arm's length, are forbidden to those bound by fiduciary ties. A trustee is held to something stricter than the morals of the market place. Not honesty alone, but the punctilio of an honor the most sensitive, is then the standard of behavior. As to this there has developed a tradition that is unbending and inveterate. Uncompromising rigidity has been the attitude of courts of equity when petitioned to undermine the rule of undivided loyalty by the "disintegrating erosion" of particular exceptions. *** Only thus has the level of conduct for fiduciaries been kept at a level higher than that trodden by the crowd.

*In re Mountain States Power Co.,* 118 F.2d at 407 (quoting *Meinhard v. Salmon,* 249 N.Y. 458, 164 N.E. 545, 546 (1928)).

I mention the fiduciary duties of the settling petitioning creditors as committee members not solely because this proposed settlement calls for them to withdraw the trustee litigation. Also germane is the aspect of the settlement involving the assignment of their claims to Mr. Edelman, an insider of the debtor and putative plan funder.

I appreciate, as the debtor's counsel stressed at the hearing, that these claims assignments do not involve the debtor as a party. Yet, in analyzing the fairness of this agreement to the bankruptcy estate, I cannot ignore this component of the overall compromise.[5] Indeed, it is referred to in the debtor's settlement agreement and notice of its existence was provided to creditors. Further, in analyzing this aspect of the compromise, I do not overlook the statement of petitioning creditors' counsel that the petitioning creditors sought to structure this assignment in a manner they believed would benefit all unsecured creditors—by requiring Mr. Edelman to subordinate the unsecured claims assigned to him to the remaining class of unsecured creditors.[6]

**5.** The Third Circuit has stressed the importance to the bankruptcy court of receiving "full information" about a proposed compromise of litigation before ruling on the proposal. *In re Martin,* 91 F.3d at 395.

**6.** As I mentioned to counsel at the hearing, however, there is little or no benefit to unsecured creditors when the subordination of claims is agreed to by a proposed chapter 11 plan funder. The funder is concerned with the overall amount

One might argue from language in *In re Mountain States Power Co.* that a committee member cannot sell or purchase claims against the debtor, even in arms-length transactions:

> When Soliday became a member of the preferred stockholders' committee and its chairman he assumed a fiduciary relationship toward the preferred stockholders whom he and his associates on the committee represented. One who stands in such a relationship may not "become the purchaser of the property which he represents, or any portion of it, though he has done so for a fair price, without fraud, at a public sale."

*Id.*, at 407 (quoting *Michoud v. Girod*, 45 U.S. 503, 557, 4 How. 503, 11 L.Ed. 1076 (1846)). Although the claims assignment transaction may be for fair value, it could appear to other creditors that the committee member either is using information available only to committee members or is using its status to further its own interests at the expense of those creditors.

Here, I need not concern myself with a general ability of members of the unsecured creditors committee to assign their claims. In this particular dispute, the transfer is to an insider of the debtor, and the committee members are to receive payment of 71% of their claims. In contrast, from the testimony presented, the debtor has proposed a much smaller dividend to be paid to other unsecured creditors as part of a pending chapter 11 plan. Further, this payment to the petitioning creditors is given in connection with their withdrawal of litigation in which they assert fraudulent conveyances by the debtor's management for the benefit of this same insider.

Under these circumstances, one must acknowledge that the concerns of the objectors—that the proposed settlement may involve a breach of fiduciary duties by the petitioning creditors—are far from frivolous. And to the extent that the proposed compromise would permit a breach of fiduciary duties, it should not receive court approval as it could not be in the interests of the estate.

On this evidentiary record, and in light of the issue before me, I do not reach any conclusions whether the petitioning creditors would breach any duties were they to act in accordance with their proposed settlement. But the evidentiary burden rested with the debtor to demonstrate that there would be no such breach; and this it has not accomplished. Accordingly, I cannot conclude that the debtor has met its burden to establish that the settlement overall is in the paramount interests of all creditors and the in the best interests of the estate. *See Young v. Higbee Co.*, 324 U.S. 204, 65 S.Ct. 594, 89 L.Ed. 890 (1945) (shareholders who withdrew their appeal from a confirmation order in return for compensation—paid from non-estate property by insiders of the debtor—larger than the plan provided to other shareholders breached their duty of good faith to other shareholders); [7] *see generally*

---

he needs to pay to obtain a confirmed plan. The creditors are concerned with the dividend they will receive. A plan funder can offset a loss of dividends payable on his claims with a smaller plan contribution. (Indeed, I frequently see principals of a closely held corporation agree to subordinate their claims in a chapter 11 plan proposed by the debtor in lieu of or as an additional component of plan funding.)

**7.** Counsel to the petitioning creditors argues that *Young v. Higbee Co.* is distinguishable from the present settlement proposal, because were the trustee litigation withdrawn, other creditors or the United States trustee would be free to initiate their own litigation. In contrast, when the shareholders in *Young* withdrew their appeal from confirmation, it was too late for other shareholders to prosecute an appeal. *See Pearson v. Ecological Science Corp.*, 522 F.2d 171,

178 (5th Cir.1975), *cert. denied*, 425 U.S. 912, 96 S.Ct. 1508, 47 L.Ed.2d 762 (1976). This distinction overlooks two aspects of the Supreme Court's analysis that are relevant to this dispute.

First, in *Young* the Court concluded that the appealing shareholders held a fiduciary duty to the other shareholders, even though they acted individually and not on behalf of any other persons. (Contrast this with the conclusion in *Pearson* that named class members hold no fiduciary duty to putative class members after their motion for class certification had been denied.) In this dispute, the petitioning creditors, as official creditor committee members, are fiduciaries on behalf of other unsecured creditors, even though other unsecured creditors could still seek the appointment of a trustee.

Second, in light of their fiduciary duty, the Court in *Young* was concerned with the propriety of two shareholders obtaining a significantly

*In re SPM Mfg. Corp.,* 984 F.2d 1305, 1314 (1st Cir.1993) ("An assigned claim may be limited if the assignment involves a breach of fiduciary duty or fraud and the breach of duty or fraud enables the assignee to acquire the claim for inadequate consideration").

In other words, if I consider the proposed settlement solely from the vantage point of the bankruptcy estate, I cannot conclude that the interests of all creditors are served by a settlement in which non-frivolous litigation—accusing debtor's management of improper dealings—is withdrawn, various parties receive releases from the debtor, and seven of nine members of the official creditors committee receive payment from an insider of the debtor in a percentage which may well exceed that paid to creditors of similar priority.

### IV.

In denying this motion under Rule 9019(a), I have focused simply on the requirement that compromises by bankruptcy fiduciaries be in the paramount interest of creditors and the best interest of the bankruptcy estate. Nationwide, a debtor in possession which has sought court approval for its settlement, is the fiduciary with the burden of persuasion on these points. In responding to the objections of certain creditors and the United States trustee, it has not met that burden.

I do not address the more general questions concerning the duties and responsibilities of the petitioning creditors. Perhaps, as the petitioning creditors assert, they cannot be compelled against their will to expend their own funds in litigation against the debtor concerning the appointment a bankruptcy trustee, and so may withdraw their motion. Perhaps, as they suggest, they are free to assign their claims without court approval. *See* Fed.R.Bankr.P. 4001(e). If they choose to act in either manner, and if there are challenges to such actions, I shall determine at that time whether their conduct was or was not permitted; and, if not permitted, I can fashion an appropriate remedy.

I do note, though, that this bankruptcy case started at the insistence of the petitioning creditors. By filing an involuntary petition, they may have constrained their own conduct as well as the debtor's. For example, it is generally understood that a creditor may not petition for involuntary relief and then defeat the involuntary petition by withdrawing after reaching its own repayment agreement with the debtor. Such settlements and withdrawals allow the involuntary process to be misused by one creditor for its own benefit. *See In re Elsub Corp.,* 70 B.R. 797, 809–10 (Bankr.D.N.J.1987); *see also In re Warren,* 181 B.R. 136 (Bankr. N.D.Ala.1995). Similarly, the petitioning creditors' consent to serve on an official creditors' committee may have also served to limit their ability to act in their own self interest.

Since it is the better exercise of discretion to deny the instant motion to approve a compromise, I shall reschedule trial on the petitioning creditors' motion seeking the appointment of a chapter 11 trustee or the conversion of this case to chapter 7.

greater dividend in a bankruptcy case than other shareholders of the same class. Here, a similar concern exists. Under the terms of the proposed settlement, these petitioning creditors may receive dividends much greater than other unsecured creditors. That the dividend may be payable from assets of the debtor's insider does not weaken this concern. In *Young,* the payment made to the two shareholders also came from assets belonging to an insider of the debtor.